PEOPLE v ARMSTRONG

Docket No. 167385. Submitted March 8, 1995, at Lansing. Decided
    June 9, 1995; approved for publication July 13, 1995, at 9:05
    A.M.

    Douglas K. Armstrong was convicted by a jury in the Oakland
    Circuit Court, Francis X. O'Brien, J., of criminal sexual conduct
    in the second degree and was sentenced to imprisonment for
    three to fifteen years. The victim, the defendant's stepsister, at
    fifteen years of age was thirteen years younger than the
    defendant when the defendant sexually assaulted her while she
    was asleep at his home during a visit. The defendant appealed.

    The Court of Appeals *held:*

    1. A person is guilty of criminal sexual conduct in the second
    degree if the person engages in sexual contact with a victim
    who is related to the person by blood or affinity to the fourth
    degree and the victim is at least thirteen but less than sixteen
    years of age, MCL 750.520c(1)(b)(ii); MSA 28.788(3)(1)(b)(ii), or is
    mentally incapable, mentally disabled, mentally incapacitated,
    or physically helpless, MCL 750.520c(1)(h)(i); MSA 28.788(3)(1)
    (h)(i). The term "affinity," which is not defined in the criminal
    sexual conduct statute, must be construed in light of its com-
    mon and approved usage and in light of the purpose and object
    of that statute. A dictionary defines affinity as a relationship by
    marriage or by ties other than those of blood. The criminal
    sexual conduct statute was intended by the Legislature to
    protect young persons from sexual contact by persons with
    whom they have a special relationship, such as relatives.
    "Step" is a prefix used in kinship terms denoting members of a
    family related by the remarriage of a parent and not by blood.
    Accordingly, the defendant and the victim, as stepbrother and
    stepsister, were related by affinity for purposes of the criminal
    sexual conduct statute.

    2. The defendant's absence from the trial when defense
    counsel rested the defendant's case without calling any wit-
    nesses did not prejudice the defendant and does not require

REFERENCES

Am Jur 2d, Rape § 30.
See ALR Index under *Brothers and Sisters; Statutory Rape.*

reversal of his conviction. The defendant did not specify which witness or evidence should have been presented, and he does not dispute that the testimony of a witness who had been expected to, but did not, testify would have been cumulative only.

3. The trial court did not abuse its discretion in scoring offense variable 7 (offender exploitation of victim vulnerability) and offense variable 12 (criminal sexual penetrations) of the sentencing guidelines.

Affirmed.

RAPE — CRIMINAL SEXUAL CONDUCT — AFFINITY.

The term "affinity," as used in the second-degree criminal sexual conduct statute to refer to the relationship between an offender and a victim, includes the relationship of stepbrother and stepsister (MCL 750.520c[1][b][ii], [h][i]; MSA 28.788[3][1][b][ii], [h][i]).

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Richard Thompson,* Prosecuting Attorney, and *Marilyn J. Day,* Assistant Prosecuting Attorney, for the people.

*Kitchen & Stringer, J.D.* (by *Thomas L. Stringer*), for the defendant.

Before: DOCTOROFF, C.J., and CAVANAGH and SMOLENSKI, JJ.

PER CURIAM. Defendant Douglas Kirk Armstrong was convicted by a jury of one count of second-degree criminal sexual conduct, MCL 750.520c(1); MSA 28.788(3)(1), and sentenced to three to fifteen years' imprisonment. Defendant appeals as of right. We affirm.

In 1991, the fifteen-year-old female victim, defendant's stepsister,[1] spent the night at defendant's home. During the night, the victim was awakened when she was sexually assaulted by defendant.

We are first called on to construe the term

---

[1] Defendant's father married the victim's mother.

affinity as used in the second-degree criminal sexual conduct statute. The information charged defendant, and the jury was instructed, with the following relevant provisions of that statute:

> (1) A person is guilty of criminal sexual conduct in the second degree if the person engages in sexual contact with another person and if any of the following circumstances exist:
>
> \* \* \*
>
> (b) That other person is at least 13 but less than 16 years of age and any of the following:
>
> \* \* \*
>
> (ii) The actor is related by blood or affinity to the fourth degree to the victim.
>
> \* \* \*
>
> (h) That other person is mentally incapable, mentally disabled, mentally incapacitated, or physically helpless,[2] and any of the following:
>
> (i) The actor is related to the victim by blood or affinity to the fourth degree. [MCL 750.520c(1)(b)(ii) and (h)(i); MSA 28.788(3)(1)(b)(ii) and (h)(i).]

Where a statute is clear and unambiguous, judicial construction or interpretation is precluded. *People v Jones,* 190 Mich App 509, 512; 476 NW2d 646 (1991). However, if reasonable minds could differ with regard to the meaning of a statute, then judicial construction is appropriate. *Michigan ex rel Oakland Co Prosecutor v Dep't of Corrections,* 199 Mich App 681, 689; 503 NW2d 465 (1993). In this case, the statute, MCL 750.520a *et seq.*; MSA 28.788(1) *et seq.*, does not define the term "affinity." Defendant argues that he could not have committed the offense of second-degree criminal sexual conduct because he was not related by affinity to the victim where they were

---

2 "Physically helpless" means in part that a person is asleep. MCL 750.520a(i); MSA 28.788(1)(i).

only stepbrother and stepsister. The prosecutor argues that the Legislature intended that the term "affinity" be construed in accordance with its common and approved definition, which includes all relationships by marriage. Thus, we believe judicial construction of the term "affinity" is appropriate in this case.

When statutory construction is necessary, this Court must "determine and give effect to the intention of the Legislature." *Jones, supra* at 513. " '[W]ords and phrases that have acquired a unique meaning at common law are interpreted as having the same meaning when used in statutes dealing with the same subject' matter as that with which they were associated at common law." *People v Reeves,* 448 Mich 1, 8; 528 NW2d 160 (1995) (quoting *Pulver v Dundee Cement Co,* 445 Mich 68, 75; 515 NW2d 728 [1994]).

Defendant relies on *Bliss v Caille Bros Co,* 149 Mich 601; 113 NW 317 (1907). In *Bliss,* the statute at issue disqualified "a judge from sitting in a case in which he would be excluded from being a juror by reason of consanguinity or affinity to either of the parties." *Id.* at 607. Our Supreme Court stated:

An examination of authorities has led to the conclusion that the doctrine of affinity relationship should be limited by the following rule: Affinity is the relation existing in consequence of marriage between each of the married persons and the blood relatives of the other, and the degrees of affinity are computed in the same way as those of consanguinity or kindred. A husband is related, by affinity, to all the blood relatives of his wife, and the wife is related, by affinity, to all the blood relatives of the husband. [*Id.* at 608. See also Black's Law Dictionary (6th ed), p 59.]

This Court has applied the *Bliss* definition of

affinity to the criminal sexual conduct statutes. In *People v Denmark,* 74 Mich App 402, 406; 254 NW2d 61 (1977), the victim, who was the thirteen-year-old sister of the defendant's wife, alleged that she had been sexually assaulted by the defendant. The defendant was charged with, and convicted of, first-degree criminal sexual conduct pursuant to MCL 750.520b(1)(b); MSA 28.788(2)(1)(b), which at that time provided in relevant part:

> (1) A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and if any of the following circumstances exists:
>
> * * *
>
> (b) The other person is at least 13 but less than 16 years of age and . . . the actor is related to the victim by blood or affinity to the fourth degree.

On appeal, the defendant argued that the first-degree criminal sexual conduct statute was unconstitutionally vague because the term "affinity" was undefined. *Id.* at 408. This Court held that the statute was not unconstitutionally vague. *Id.* at 409. This Court quoted the *Bliss* definition for the purpose of establishing that the term "affinity" had an accepted meaning. *Id.* at 408.

However, the term "affinity" is not capable of precise definition. *In re Estate of Bordeaux,* 37 Wash 2d 561, 564; 225 P2d 433 (1950). Rather, at common law, whether someone was related to another by affinity depended upon the legal context presented. See generally *id.* at 566-573. The factual and legal context in which our Supreme Court defined affinity in *Bliss* differs from the factual and legal context of this case. *Reeves, supra.* The *Bliss* definition of affinity also predates the statutes dealing with criminal sexual conduct

by approximately six decades. See 1974 PA 266. Additionally, in *Bliss,* our Supreme Court expressly limited the applicability of the definition of affinity that it adopted:

> We should keep in mind, also, the fact that the use of the doctrine [of affinity] attempted is for the purpose only of determining whether in support of a high public policy affecting the administration of the law a juror or a judge should be regarded as indifferent or as biased. [*Bliss, supra* at 608.]

Moreover, the factual and legal context in which this Court in *Denmark* applied the *Bliss* definition of affinity differs from that of this case, particularly where legislative intent was not at issue in *Denmark.* Thus, we do not believe that *Bliss* and *Denmark* provide conclusive guidance concerning whether the Legislature intended the term "affinity" to encompass stepbrothers and stepsisters. *Sizemore v Smock,* 430 Mich 283, 291, n 15; 422 NW2d 666 (1988); *Topps-Toeller, Inc v City of Lansing,* 47 Mich App 720, 729-730; 209 NW2d 843 (1973); Administrative Order No. 1994-4.

Defendant also points to the marriage statute, MCL 551.3; MSA 25.3, as support for his argument that the *Bliss* definition is the proper definition of affinity. The marriage statute provides:

> No man shall marry his mother, grandmother, daughter, granddaughter, stepmother, grandfather's wife, son's wife, grandson's wife, wife's mother, wife's grandmother, wife's daughter, wife's granddaughter, nor his sister, brother's daughter, sister's daughter, father's sister, or mother's sister, or cousin of the first degree. [MCL 551.3; MSA 25.3.]

However, the marriage statute is not consistent

with the *Bliss* definition of affinity. If it were, the statute would also prohibit a man from marrying his wife's sister because this would be a relationship between one spouse and a blood relative of the other spouse. See *Bliss, supra.* Thus, the marriage statute does not give additional weight to defendant's argument that Michigan has consistently defined the term "affinity."

Accordingly, we turn to principles of statutory construction for guidance. All provisions of the Penal Code are construed according to the fair import of their terms. MCL 750.2; MSA 28.192; *People v McBride,* 204 Mich App 678, 682; 516 NW2d 148 (1994). Statutory language should be given a reasonable construction, considering its purpose and the object sought to be accomplished. *Jones, supra.* Where a word is undefined by statute, it is to be construed according to its common and approved usage. In doing so, resorting to the dictionary definition is appropriate. *People v Barajas,* 198 Mich App 551, 555; 499 NW2d 396 (1993). However, courts cannot expand the scope of the statutory prohibition. *Reeves, supra.* The Legislature is presumed to be familiar with the rules of statutory construction. *Jones, supra.*

In fashioning the criminal sexual conduct statute, MCL 750.520a *et seq.*; MSA 28.788(1) *et seq.*, the Legislature intended to protect young persons from sexual contact by persons with whom they have a special relationship, such as relatives. See MCL 750.520c; MSA 28.788(3); see also generally *People v Mosko,* 441 Mich 496, 506; 495 NW2d 534 (1992); *People v Garrison,* 128 Mich App 640, 645-646; 341 NW2d 170 (1983); *Denmark, supra* at 410; Senate Legislative Analysis, SB 1207, July 18, 1974.

The term "affinity" is "neither an unusual nor esoteric word; nor does the criminal sexual con-

duct statute use the term in an uncommon or extraordinary context." *Denmark, supra* at 408. *Random House College Dictionary* (rev ed) defines the term "affinity" as a "relationship by marriage or by ties other than those of blood." *Barajas, supra*; see also MCL 8.3a; MSA 2.212(1). The common and ordinary meaning of affinity is marriage. *State v C H,* 421 So 2d 62, 63 (Fla App, 1982). The term "step" is defined as "a prefix used in kinship terms denoting members of a family related by the remarriage of a parent and not by blood." *Random House College Dictionary* (rev ed). Thus, pursuant to the rules of statutory construction, it would appear that defendant and the victim were related by affinity because they were family members related by marriage.

Moreover, the specific rules of statutory construction are merely aids to interpretation. *People v Russo,* 439 Mich 584, 595; 487 NW2d 698 (1992). In looking to the object of the second-degree criminal sexual conduct statute and the harm it is designed to remedy, and in applying a reasonable construction that best accomplishes the purpose of that statute in this case, we are persuaded that the term "affinity" encompasses the relation between a stepbrother and a stepsister. *Russo, supra.* If the term were not so construed, then the first- and second-degree criminal sexual conduct statutes would impose a penalty more severe where the perpetrator sexually assaulted a spouse's brother or sister than where the perpetrator sexually assaulted a stepbrother or stepsister. In this time of divorce, remarriage, and extended families, we see no reason why the Legislature would give enhanced protection to a victim related to a perpetrator as an in-law but not to a victim related to a perpetrator as a stepbrother or stepsister. Thus, defining the term "affinity" to encompass the rela-

tion between a stepbrother and a stepsister avoids a construction of the second-degree criminal sexual conduct statute that would yield absurd results. *People v Weatherford,* 193 Mich App 115, 119; 483 NW2d 924 (1992). Accordingly, we find no error in the jury instructions or defendant's conviction of second-degree criminal sexual conduct.

Next, defendant argues that his absence from the portion of his trial where defense counsel rested defendant's case without calling any defense witnesses prejudiced him because he was denied the opportunity to object to the failure to present evidence on his behalf. We disagree.

Where the record is silent concerning whether defendant's absence for a portion of his trial was voluntary or whether defendant knew of, and intentionally decided to abandon, his right to be present at that portion of the trial, we cannot presume that defendant validly waived this right. *People v Woods,* 172 Mich App 476, 478-479; 432 NW2d 736 (1988). However, the test for whether defendant's absence from a part of his trial requires reversal of his conviction is whether there was any reasonable possibility that defendant was prejudiced by his absence. *People v Morgan,* 400 Mich 527, 536; 255 NW2d 603 (1977); *Woods, supra* at 480.

The record reveals that, during the prosecution's case, the prosecutor and defense counsel stipulated in defendant's presence that Tom Bicksman, a potential witness, could be stricken from the witness list. Pursuant to this stipulation, the prosecutor stated that both she and defense counsel believed that Bicksman's testimony would be cumulative because Bicksman had not been present in the room where defendant's crime occurred. After the prosecution rested its case and the jury was excused, defendant confirmed to the trial

court that he would not testify. Defense counsel indicated to the trial court in defendant's presence that Bicksman might be called as a defense witness, but that counsel first had to confer with defendant.

After a recess in the proceedings, the trial court noted that defendant was not present and then called in the jury pursuant to an agreement with defense counsel that the proceedings could be conducted without defendant. The trial court stated that it understood that defense counsel had conferred with defendant, and that the defense would rest, which defense counsel confirmed. The jury was excused until the next day, and the trial court, the prosecution, and defense counsel proceeded to discuss jury instructions. When the trial reconvened the following day, defendant neither objected to the fact that no evidence would be presented on his behalf nor requested that proofs be reopened to permit the presentation of evidence on his behalf.

On appeal, defendant does not specify any particular witness or evidence that should have been, but was not, presented on his behalf. Moreover, defendant does not argue that Bicksman would have presented new or additional relevant evidence. Thus, where the one witness the defense contemplated calling would have presented only cumulative testimony, we conclude that defendant's brief absence from the trial did not make any difference in the result reached. *Morgan, supra* at 537. Reversal of defendant's conviction is not required. *Id.; Woods, supra.*

Finally, defendant argues that the trial court abused its discretion in scoring certain sentencing variables. We disagree. The trial court did not abuse its discretion in scoring fifteen points for

offense variable 7 (offender exploitation of victim vulnerability). *People v Derbeck,* 202 Mich App 443, 449; 509 NW2d 534 (1993). The record reveals that there is an approximately thirteen-year age difference between defendant and the victim. Because of her age, the victim could not provide her own transportation and was thus dependent on another for a ride home on the night defendant's offense occurred. In the presentence investigation report, defendant stated that he provided the victim with beer and that, although he knew she was underage, he saw no harm in doing so "since she was in my protection." The victim testified that she slept in defendant's bedroom because she "trusted him," and she "wasn't going to argue with him about it" because "he's the older brother, and he always wins." Thus, the record contained evidence that defendant exploited the victim on the basis of her age or his position of authority. See *People v Cotton,* 209 Mich App 82, 84; 530 NW2 495 (1995); Michigan Sentencing Guidelines (2d ed), p 45.

The trial court did not abuse its discretion in scoring twenty-five points for offense variable 12 (criminal sexual penetrations). *Derbeck, supra.* The victim testified that during the sexual assault defendant put his fingers inside her vagina and then touched her breast through her bra. Thus, the record contained evidence that defendant penetrated the victim during the same criminal transaction as the sexual contact. Sentencing Guidelines, p 45.

Affirmed.