PEOPLE v ZAJACZKOWSKI

Docket No. 295240. Submitted February 1, 2011, at Grand Rapids. Decided July 26, 2011, at 9:00 a.m. Leave to appeal granted, 490 Mich 1004.

Jason J. Zajaczkowski pleaded guilty in the Kent Circuit Court, James R. Redford, J., to a charge of first-degree criminal sexual conduct, MCL 750.520b(1)(b)(*ii*). The plea was conditioned on defendant's being permitted to appeal with regard to the issue whether the undisputed facts established that defendant committed only third-degree criminal sexual conduct, MCL 750.520d(1)(a). The facts indicate that defendant was born in 1977 during the marriage of Walter and Karen Zajaczkowski. Walter and Karen divorced in 1979. The divorce judgment referred to defendant as "the minor child of the parties." In 1992, Walter had a child with another woman; that child was the victim in this case. In 2007, when defendant was approximately 30 years old and the victim was approximately 15, the criminal sexual conduct occurred and, in 2008, the victim gave birth to defendant's child. During defendant's preliminary examination, Walter indicated that although he was not sure that he was defendant's biological father, he always referred to him as his son. Shortly thereafter, genetic testing indicated that Walter was not defendant's biological father. The Court of Appeals granted defendant's delayed application for leave to appeal.

The Court of Appeals *held*:

1. To be guilty of violating MCL 750.520b(1)(b)(*ii*), defendant must have sexually penetrated a victim at least 13 years old but less than 16 years old and defendant must have been related to the victim by blood or affinity to the fourth degree. There is no dispute that defendant sexually penetrated the victim, who was approximately 15 years old.

2. The definition of being related "by blood" in both legal and nonlegal dictionaries means sharing a common ancestor. The phrase "related . . . by blood," therefore, means being related by descent from a common ancestor.

3. The term "affinity" means a relationship that originates through a marriage.

4. Degrees of kinship were computed according to the rules of the civil law when the criminal sexual conduct statute was enacted. Under the civil-law method of computing the degree of relationship, siblings are related to the second degree.

5. The 1979 divorce judgment determined that defendant was the issue of the marriage between the victim's father and defendant's mother. Because defendant was conceived and born during his mother's marriage to the victim's father, a strong presumption of legitimacy arose. Only defendant's mother and his legal father could rebut the presumption with clear and convincing evidence in a proper legal proceeding. Defendant lacked standing to challenge that he is the legitimate issue of the victim's father. Therefore, as a matter of law, defendant and the victim are related by blood—a brother and a sister sharing the same father—and they are related within the second degree of consanguinity by descent from a common ancestor.

Affirmed.

1. CRIMINAL LAW — FIRST-DEGREE CRIMINAL SEXUAL CONDUCT — WORDS AND PHRASES — RELATED BY BLOOD — RELATED BY AFFINITY.

The phrase "related . . . by blood" used in MCL 750.520b(1)(b)(*ii*) means being related by descent from a common ancestor; the term "affinity" in the statute refers to a relationship that originates through marriage.

2. PARENT AND CHILD — PRESUMPTION OF LEGITIMACY — CHALLENGES TO PRESUMPTION OF LEGITIMACY.

A child conceived and born during a lawful marriage is presumed to be the legitimate issue of the marriage; only the mother and the presumed legal father may challenge the presumption of legitimacy with clear and convincing evidence in a proper legal proceeding.

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *William A. Forsyth*, Prosecuting Attorney, and *Timothy K. McMorrow*, Assistant Prosecuting Attorney, for the people.

*Ronald D. Ambrose* for defendant.

Before: OWENS, P.J., and MARKEY and METER, JJ.

MARKEY, J. We granted defendant's delayed applica-

tion for leave to appeal his conviction following a guilty plea of first-degree criminal sexual conduct, MCL 750.520b(1)(b)(*ii*). Defendant entered his plea on the condition that he be permitted to appeal whether the undisputed facts here establish that he may only be found guilty of third-degree criminal sexual conduct, MCL 750.520d(1)(a).

Defendant was born on January 19, 1977, during the marriage of Walter and Karen Zajaczkowski. Walter and Karen divorced in 1979. The April 3, 1979, judgment of divorce awarded custody of defendant to Karen and visitation rights to Walter. The court ordered Walter to pay child support for defendant and ordered Walter to retain defendant as the beneficiary of his life insurance policy. The judgment of divorce referred to defendant as "the minor child of the parties." Walter had a child with another woman in 1992, and that child is the victim in this case and presumably for some time was considered defendant's half-sister. After the divorce, defendant was in and out of Walter's and the victim's life. Defendant was approximately 30, and the victim was approximately 15, when the criminal sexual conduct occurred in 2007. The victim gave birth to defendant's child in 2008.

During defendant's preliminary examination, Walter, in response to a question, indicated that he was not sure whether he was defendant's father. Still, he always referred to him as his son. Shortly thereafter, genetic testing indicated that Walter is not defendant's natural father. The legal issue of first impression is whether defendant "is related to the victim by blood or affinity to the fourth degree." The trial court answered "yes." Also at issue is whether defendant has standing to challenge his own paternity. We conclude that he does not. We affirm.

This case involves statutory construction, an issue of law, which this Court reviews de novo. *People v Perkins*, 473 Mich 626, 630; 703 NW2d 448 (2005). We must give effect to the intent of the Legislature as expressed in the plain language of the statute. *Id.* "We may consult dictionary definitions of terms that are not defined in a statute." *Id.* at 639.

MCL 750.520b(1)(b)(*ii*) provides that "[a] person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and . . . [the] other person is at least 13 but less than 16 years of age and . . . [t]he actor is related to the victim by blood or affinity to the fourth degree." So, to be guilty of violating MCL 750.520b(1)(b)(*ii*), defendant must have (1) sexually penetrated (2) a victim at least 13 years old but less than 16 years old, and (3) defendant must have been related to the victim by blood or affinity to the fourth degree. The parties do not dispute the first two elements. The sole issue is whether defendant is related to the victim by blood or affinity to the fourth degree. We conclude that notwithstanding the genetic testing results, the strong presumption of legitimacy has not been overcome by proper parties with clear and convincing evidence in a court of competent jurisdiction. *In re KH*, 469 Mich 621, 634-635; 677 NW2d 800 (2004). Because defendant and the victim share the same father, they are "related . . . by blood . . . to the fourth degree" as a matter of law.

The Legislature has not defined the terms "by blood" and "affinity" in the criminal sexual conduct statute. This Court has not previously addressed the meaning of a relationship "by blood" in the context of the criminal sexual conduct statute. In the context of an insurance policy, however, this Court has addressed the meaning of the term "relative," which was defined in the insur-

ance policy at issue as " 'a person related to the named insured by blood, marriage or adoption who is a resident of the same household.' " *Cvengros v Farm Bureau Ins*, 216 Mich App 261, 265; 548 NW2d 698 (1996). Lacking further definitions in the insurance policy, the Court sought the aid of a dictionary for the meaning of the term "by blood." The Court stated that a "blood relation" is "also known as one related by consanguinity," meaning "a person who shares with another descent from a common blood ancestor." *Id.*, citing Black's Law Dictionary (6th ed), p 172; see also *In re Mooney Estate*, 154 Mich App 411, 414; 397 NW2d 329 (1986) (defining "lineal descendants" as "blood relatives in the direct line of descent"), and 23 Am Jur 2d, Descent and Distribution, § 70, pp 690-691 (defining affinity and consanguinity). Similarly, a nonlegal dictionary defines a "blood relation" as "a person related by birth rather than by marriage." *Random House Webster's College Dictionary* (2000). Thus, both the common and the legal definitions of being related "by blood" mean sharing a common ancestor. Relatives who share only paternal or maternal descent are so-called half-bloods, but Michigan has long recognized that this is a distinction generally without legal effect. See *In re Heffernan Estate*, 143 Mich App 85, 89; 371 NW2d 481 (1985); MCL 700.2107. Giving effect to the Legislature's intent as expressed in the text of the statute, the phrase "related . . . by blood" as used in the criminal sexual conduct statute means being related by descent from a common ancestor.

This conclusion is reinforced by reading "by blood" in the context of the phrase in which it appears. Specifically, "related . . . by blood" is an alternative to being related "by . . . affinity." This Court has addressed the meaning of the term "affinity" in the context of the criminal sexual conduct statute several times. See

*People v Russell*, 266 Mich App 307, 311, 313; 703 NW2d 107 (2005), *People v Armstrong*, 212 Mich App 121, 122-129; 536 NW2d 789 (1995), and *People v Denmark*, 74 Mich App 402, 408; 254 NW2d 61 (1977). Each of these cases considered the well-established meaning of the term "affinity" set forth in *Bliss v Caille Bros Co*, 149 Mich 601, 608; 113 NW 317 (1907):

> Affinity is the relation existing in consequence of marriage between each of the married persons and the blood relatives of the other, and the degrees of affinity are computed in the same way as those of consanguinity or kindred. A husband is related, by affinity, to all the blood relatives of his wife, and the wife is related, by affinity, to all the blood relatives of the husband.

In holding that stepsiblings were related by affinity, the *Armstrong* Court noted that the *Random House College Dictionary* (rev ed) defined "affinity" as "a 'relationship by marriage or by ties other than those of blood' " and that "[t]he common and ordinary meaning of affinity is marriage." *Armstrong*, 212 Mich App at 128. Consequently, the Court ruled that the "defendant and the victim were related by affinity because they were family members related by marriage." *Id.* Thus, the accepted meaning of affinity is a relationship that originates through marriage.

We also find the *Bliss* definition of affinity helpful in understanding the entire phrase in the criminal sexual conduct statute requiring that "[t]he actor is related to the victim by blood or affinity to the fourth degree." MCL 750.520b(1)(b)(*ii*). The statute does not state how degrees of relationships are to be determined, but *Bliss*, 149 Mich at 608, notes that "the degrees of affinity are computed in the same way as those of consanguinity" or blood. There are two ways that the degree of a relationship may be determined, "the civil-law method, and the

common-law (or canon-law) method." 23 Am Jur 2d, Descent and Distribution, § 72, p 692. Michigan has long followed the civil-law method. See *Ryan v Andrews*, 21 Mich 229, 234 (1870). When the Legislature enacted the current criminal sexual conduct statute, "degrees of kindred [were] computed according to the rules of the civil law . . . ." MCL 702.84 (repealed by 1978 PA 642, effective July 1, 1979); see *In re Coughlin's Estate*, 336 Mich 279, 280; 57 NW2d 884 (1953).

> The method of computing degrees of consanguinity by the civil law is to begin at either of the persons claiming relationship, and count up to the common ancestor, and then downwards to the other person, in the lineal course, calling it a degree for each person, both ascending and descending, and the degrees they stand from each other is the degree in which they are related. [*Van Cleve v Van Fossen*, 73 Mich 342, 345; 41 NW 258 (1889).]

Under the civil-law method of computing the degree of relationship, siblings are related to the second degree. *Crystal v Hubbard*, 414 Mich 297, 313 n 6; 324 NW2d 869 (1982).

We note that the parties' arguments below focused on whether defendant was related by affinity to the victim's father, and, hence, to the victim. Defendant argued below and on appeal that because genetic testing conclusively showed that defendant is not the biological son of the victim's father, they are not related by blood. And, defendant argues, any relationship by affinity ended when the victim's father divorced defendant's mother. In the trial court, the prosecutor conceded that genetic testing had established that defendant was not a blood relative of the victim's father, but defendant was the legal son of the victim's father pursuant to a 1979 judgment of divorce that determined that defendant was the issue of

the marriage between defendant's mother and the victim's father. The trial court determined that there existed a "decade's long relationship of affinity" between the victim and defendant and a decade's long declaration of a court of competent jurisdiction that defendant is the issue of the victim's father. The trial court also noted that the "step sibling relationship" between defendant and the victim went unchallenged until after criminal proceedings were instituted and that the criminal sexual conduct statute is designed to protect minor children from sexual abuse by persons with whom they have a close relationship, citing *Armstrong*, 212 Mich App at 127.

On appeal the prosecution concedes that there is no evidence a relationship by affinity currently exists between the victim and defendant. The prosecution also asserts that its concession that no biological relationship exists between defendant and the victim's father does not affect the legal conclusion that defendant and the victim are brother and sister because they share the same legal father. The prosecution argues that the judgment of divorce between the victim's father and defendant's mother did not state that defendant was not the issue of the marriage. Moreover, it is important to emphasize that defendant lacks standing to collaterally challenge the divorce judgment. Consequently, as a matter of law, defendant and the victim are related by blood— brother and sister sharing the same father.

We agree with the prosecutor's analysis. The 1979 judgment of divorce determined that defendant was the issue of the marriage between the victim's father and defendant's mother. Even if the judgment had not made such a determination, because defendant was conceived and born during the marriage, he is presumed to be the

legitimate issue of the marriage. MCL 552.29[1]; *In re KH*, 469 Mich at 634-635. "The rule that a child born in lawful wedlock will be presumed to be legitimate is as old as the common law. It is one of the strongest presumptions in the law." *People v Case*, 171 Mich 282, 284; 137 NW 55 (1912). Indeed, the presumption was once immutable because "Lord Mansfield's Rule" precluded the admission of the testimony of either the husband or the wife that a child was not the issue of the marriage. *Serafin v Serafin*, 401 Mich 629, 632-633; 258 NW2d 461 (1977). The *Serafin* Court abrogated Lord Mansfield's Rule in Michigan and held that the presumption of legitimacy may be rebutted by clear and convincing evidence. *Id.* at 634-636. Nonetheless, courts have held that only the mother and the presumed legal father may challenge the presumption of legitimacy.

In *Girard v Wagenmaker*, 437 Mich 231, 235; 470 NW2d 372 (1991), the Court held that a putative biological father lacked standing to challenge the presumption under either the Paternity Act, MCL 722.711 *et seq.*, or the Child Custody Act, MCL 722.21 *et seq*. On the basis of the language of the Paternity Act, the Court held that a putative biological father lacked standing to bring an action to establish paternity unless at the time the complaint was filed there was a prior court determination that the child was not the issue of the marriage. *Girard*, 437 Mich at 242-243. Similarly, in *In re KH*, the Court held that a putative biological father could not intervene in a child protective proceeding to seek a determination of paternity where the child had a presumptive legal father. *In re KH*, 469 Mich at 624.

---

[1] MCL 552.29 provides: "The legitimacy of all children begotten before the commencement of any action under this act [regarding divorce] shall be presumed until the contrary be shown."

The Court opined that "[i]f the mother or legal father does not rebut the presumption of legitimacy, the presumption remains intact, and the child is conclusively considered to be the issue of the marriage despite lacking a biological relationship with the father." *Id.* at 635.

Our Supreme Court more recently reiterated these principles in *Barnes v Jeudevine*, 475 Mich 696; 718 NW2d 311 (2006). In that case, the child was born four months after entry of a default judgment of divorce that provided that " 'no children were born of this marriage and none are expected.' " *Id.* at 699. The plaintiff putative biological father sought an order of filiation under the Paternity Act. The defendant mother, who had previously signed an affidavit of parentage with the plaintiff, denied that the child was born " 'out of wedlock.' " *Id.* 700. After discussing the longstanding presumption of legitimacy, the Court held that the Paternity Act "requires that there be an affirmative finding regarding the child's paternity in a prior legal proceeding that settled the controversy between the mother and the legal father." *Id.* at 705. The affidavit that the parties had signed was unavailing because there had been no legal action addressing the issue of the child's paternity during which the presumption of legitimacy had been rebutted by clear and convincing evidence. *Id.* at 706-707. Thus, the plaintiff lacked standing under the Paternity Act because the child was conceived during the marriage, and there was no prior court determination that the child was not the issue of the marriage. *Id.* at 707.

Rules similar to those discussed in these cases involving paternity actions, child custody disputes, and child protective proceedings have been codified with respect

to intestate succession. MCL 700.2114(1)(a) provides: "If a child is born or conceived during a marriage, both spouses are presumed to be the natural parents of the child for purposes of intestate succession." Furthermore, "[o]nly the individual presumed to be the natural parent of a child under subsection (1)(a) may disprove a presumption that is relevant to that parent and child relationship, and this exclusive right to disprove the presumption terminates on the death of the presumed parent." MCL 700.2114(5).

Here, because defendant was conceived and born during his mother's marriage to the victim's father, the strong presumption of legitimacy arose. *In re KH*, 469 Mich at 634-635. Only defendant's mother and his legal father may rebut the presumption with clear and convincing evidence in a proper legal proceeding. *Id.* at 635; *Barnes*, 475 Mich at 705; MCL 700.2114(5). For these reasons, we agree with the prosecutor that defendant lacks standing to challenge that he is the legitimate issue of the victim's father.[2] Therefore, as a matter of law, defendant and the victim are related by blood— brother and sister sharing the same father—and they are related within the second degree of consanguinity by descent from a common ancestor. This Court will affirm the trial court when it reaches the correct result

---

[2] Although not raised by the parties, we question whether the circuit court presiding over a criminal case would have ancillary jurisdiction to set aside the presumption of legitimacy. The circuit court is a court of general jurisdiction, MCL 600.151, and has "original jurisdiction in all matters not prohibited by law . . . ." Const 1963, art 6, § 13. The circuit court would also acquire in personam jurisdiction over one accused of committing a felony upon the filing of a proper bindover by the district court. *People v Goecke*, 457 Mich 442, 458-459; 579 NW2d 868 (1998). But MCL 600.1021(1)(a) grants to the family division of the circuit court the "sole and exclusive jurisdiction over . . . [c]ases of divorce and ancillary matters . . . ." See *People v Likine*, 288 Mich App 648, 654; 794 NW2d 85 (2010), lv gtd 488 Mich 955 (2010).

even if for the wrong reason. *People v Lyon*, 227 Mich App 599, 612-613; 577 NW2d 124 (1998).

We affirm.[3]

OWENS, P.J., and METER, J., concurred with MARKEY J.

---

[3] We are bound by stare decisis and decline defendant's invitation to "revisit" the issue of jail credit for parolees, an issue decided in *People v Idziak*, 484 Mich 549; 773 NW2d 616 (2009).