# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
November 24, 2015

v

STEVEN MICHAEL BERG,

Defendant-Appellant.

No. 321977
Saginaw Circuit Court
LC No. 13-039277-FC

Before: GADOLA, P.J., and HOEKSTRA and M. J. KELLY, JJ.

PER CURIAM.

Defendant, Steven Michael Berg, appeals by right his jury convictions of four counts of criminal sexual conduct in the first degree (CSC-I), MCL 750.520b; two counts of criminal sexual conduct in the second degree (CSC-II), MCL 750.520c; one count of criminal sexual conduct in the third degree (CSC-III), MCL 750.520d; one count of criminal sexual conduct in the fourth degree (CSC-IV), MCL 750.520e; one count of engaging in child sexually abusive activity, MCL 750.145c(2); and two counts of possession of child sexually abusive material, MCL 750.145c(4). The trial court sentenced Berg as a third habitual offender, MCL 769.11, to serve 337 months to 60 years in prison for each conviction of CSC-I; 200 months to 30 years in prison for both convictions of CSC-II; 240 months to 30 years in prison for his CSC-III conviction; 30 months to four years in prison for his CSC-IV conviction; 240 months to 40 years in prison for his conviction of child sexually abusive activity; and 60 months to eight years in prison for both convictions of possession of child sexually abusive material. Because we conclude that Berg has not demonstrated any error warranting a new trial, we affirm.

## I. BASIC FACTS

Berg had custody of his daughters, A.B., K.B., and M.B. Each testified that when they were young teenagers, Berg asked them to pose for photographs wearing clothing that he said he planned to sell on eBay.

Berg's oldest daughter, A.B., testified that she had expressed an interest in fashion modeling, and Berg offered to help her create a portfolio. She initially wore "jeans [and] t-shirts" when Berg photographed her, but over time, her father convinced her to wear lingerie. In a photograph admitted at trial, A.B. wore translucent lingerie with thong-style underwear. Berg told her that including such photographs in her portfolio would lead to higher paying jobs and more opportunities.

-1-

The prosecutor submitted photographs of K.B. and M.B. at trial, which showed both wearing a bikini with a thong-style bottom. M.B. testified that she did not want to wear the bikini, but Berg reassured her that she would only have to wear it for a short time. In another photograph, K.B. was dressed in a thong-style leotard that she said Berg had chosen. In various other photographs, the camera was apparently angled between the girls' legs, or the girls were posed with their legs apart. Berg's daughters each testified that he directed the photo shoots and told them what to wear and how to pose. They also each testified that, after they had posed for the photographs, Berg began to touch them inappropriately.

A.B. testified that, on one occasion, she fell asleep while watching a movie with Berg in his bedroom, which was where the television was located. When she woke up, he was "rubbing" her breasts over her clothing. On another occasion, A.B. had fallen asleep again while watching television and woke to Berg touching her "vaginal area" over her clothes. According to A.B., Berg then put his hand beneath her clothes and touched the inside of her vagina. She stated that she asked Berg what he was doing, and he turned and pretended to be asleep.

K.B., who had an unspecified disability, testified that Berg also inappropriately touched her while they were watching television. She said they were lying together on their sides when he placed his hand over her genital area; she did not say anything to him, but got up and walked away. Berg's youngest daughter, M.B., testified that he had touched her breasts and genitals on several occasions, both over and underneath her clothing. M.B. testified that the touchings occurred repeatedly for about a month before she disclosed them to a school counselor; M.B. also reported the allegations to a police officer.

## II. CHILD SEXUALLY ABUSIVE MATERIAL

Berg first argues that MCL 750.145c is unconstitutionally overbroad. According to Berg, the statute prohibits possession not only of child sexually abusive material, but also unconstitutionally criminalizes his private possession of sexually explicit photographs of A.B., which were taken for modeling purposes when, according to Berg, she was 17 years of age. Because A.B. was above the age of consent for sexual intercourse when she was photographed, he maintains, she was also able to consent to the taking of sexually explicit photographs.

Under MCL 750.145c(4), the Legislature made it a felony for a person to "knowingly" possess or seek and access "any child sexually abusive material," but only if, in relevant part, "that person knows, has reason to know, or should reasonably be expected to know the child is a child . . . ." "Child sexually abusive material" means "any depiction" of a child engaging in a listed sexual act, including "sexual intercourse, erotic fondling, sadomasochistic abuse, masturbation, passive sexual involvement, sexual excitement, or erotic nudity." MCL 750.145c(1)(*i*) and (o). Berg contends that the statute is unconstitutional under *Ferber v New York*, 458 US 747; 102 S Ct 3348; 73 L Ed 2d 1113 (1982), because it prohibits not only speech that involves the sexual abuse of children, but also prohibits the possession of "sexy photographs of a clothed individual above the age of consent." Because the statute clearly prohibits only speech involving sexual exploitation or abuse of children and the Legislature may properly regulate such material, Berg's argument lacks merit.

The statute provides that possession of "child sexually abusive material" is prohibited and defines "child" to be a person under the age of 18. MCL 750.145c(1)(b)(*i*), (o); MCL 750.145c(2). One investigating officer described A.B.'s pose in one photograph as "using her hands to attract your attention" to her breasts, which falls under the statutory definition of erotic fondling. See MCL 750.145c(1)(g). In other photographs, the children's poses and attire could reasonably be characterized as passive sexual involvement. MCL 750.145c(1)(*l*). Although there was evidence that A.B. was younger than 17 years of age in the photos, even if she were 17 as Berg claims, the photographs plainly fell within the prohibitions of the statute. MCL 750.145c(1)(b)(*i*). Berg has not identified any authority for the proposition that it is unconstitutional for a legislature to criminalize child pornography where the statute applies to children who can nevertheless legally consent to sexual intercourse. In *Ferber*, the Court noted that various states define "child" differently, but made no judgment regarding the definitions. See *Ferber*, 458 US at 764 n 17. And, since the decision in *Ferber*, federal courts have held that Congress can constitutionally regulate pornography involving all minors under the age of eighteen. See *United States v Bach*, 400 F3d 622, 629 (CA 8, 2005) (holding that Congress' decision to change the definition of minor to include anyone under 18 years of age was rationally related to Congress' interest in regulating child pornography). Consequently, Berg has not established that MCL 145c is unconstitutionally overbroad.

## III. RIGHT TO BE PRESENT

During a brief period of trial when Berg was absent, the prosecutor asked the court to include a jury instruction defining the phrase "appears to be a child [in a depiction]" to mean "that the depiction appears to include or conveys the impression that [it] includes a person who is less than 18 years of age, and the depiction was created using a depiction of any part of an actual person who is less than 18 years of age." Berg's trial lawyer objected to the instruction on the basis of his belief that it was not pertinent to the case. On appeal, Berg argues that he was prejudiced by the fact that the instruction was discussed in his absence. Berg also claims that the instruction itself was unfairly prejudicial because the jury was initially instructed that A.B. was "14, 15, or 16 at the time of the alleged act," and the modified instruction indicated that she was under the age of 18, which no longer favored him. This argument is not persuasive because there is no evidence in the record that Berg was unduly prejudiced by his absence, and because the language of the instruction proposed by the prosecutor was taken directly from the statute.

A defendant has the right to be present at his trial. MCL 768.3. This right is also "impliedly guaranteed" by the federal and state Confrontation Clauses. See *People v Mallory*, 421 Mich 229, 246 n 10; 365 NW2d 673 (1984), citing *Illinois v Allen*, 397 US 337, 338; 90 S Ct 1057; 25 L Ed 2d 353 (1970). A defendant also has the right to be present "during the voir dire, selection of and subsequent challenges to the jury, presentation of evidence, summation of counsel, instructions to the jury, rendition of the verdict, imposition of sentence, and any other stage of trial where the defendant's substantial rights might be adversely affected." *Id*. at 247. Whether a defendant's right to due process has been violated by his absence from trial is determined on a case-by-case basis. See *People v Thomas*, 46 Mich App 312, 319; 208 NW2d 51 (1973). A defendant's absence from a part of his trial only warrants reversal if "there was any reasonable possibility that defendant was prejudiced by his absence." *People v Armstrong*, 212 Mich App 121, 129; 536 NW2d 789 (1995).

The "generally prevailing [view is] that motions, conferences and discussions of law, even during trial, do not involve substantial rights vital to the defendant's participation in his defense." *Thomas*, 46 Mich App at 320. In this case, the discussion concerning the proposed jury instruction involved a matter of law, which Berg's lawyer plainly addressed on Berg's behalf. Indeed, his trial lawyer objected to the instruction and proffered a cogent reason for rejecting the proposed instruction. It is difficult to see how Berg could have contributed further had he been present. On this record, Berg has not shown that there was a reasonable possibility that he was prejudiced by his brief absence during this discussion; therefore, he is not entitled to relief. See *Armstrong*, 212 Mich App at 129.

## IV. EXCLUSION OF EVIDENCE

Berg argues next that the trial court erred when it refused to admit an audiotape of one of three interviews that he gave to police officers. The prosecutor played the videotape of Berg's interview with the investigating detective for the jury. Berg's trial lawyer then sought to play Berg's other two interviews, which were conducted by a different detective. The trial court allowed one but excluded the audiotape of a third interview after the prosecutor objected that Berg's out-of-court statements were not the admission of a party-opponent and were thus inadmissible under MRE 801(d)(2). Berg argues that the exclusion of this interview violated the rule of completeness. See MRE 106.

MRE 106 provides that "[w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." Citing *People v Warren*, 65 Mich App 197, 200; 237 NW2d 247 (1975), Berg maintains that the rule required the trial court to admit the "entire conversation" he had with detectives into evidence after it allowed the prosecutor to introduce one interview. Contrary to Berg's assertion, the rule of completeness did not require the trial court to admit every interview if it admitted any one interview.

Our Supreme Court has held that "[t]he premise of the rule is that a thought or act cannot be accurately understood without considering the entire context and content in which the thought was expressed." *People v McReavy*, 436 Mich 197, 214-215; 462 NW2d 1 (1990). Berg did not argue at trial, and has not shown on appeal, that the recording of the jail interview was necessary to understand his statements during the other interviews. Under MRE 801(d)(2), Berg was not permitted to introduce his own out-of-court statement. This Court has held that where "statements were not offered against the party making the statements as required by MRE 801(d)(2), the statements were not admissible under the exception to the hearsay rule regarding an admission by a party." *People v Jensen*, 222 Mich App 575, 581; 564 NW2d 192 (1997), vacated in part on other grounds 456 Mich 935 (1998).

The trial court properly excluded the statement.

## V. RIGHT TO PRESENT A DEFENSE

Finally, Berg argues that the court's refusal to admit his jail interview violated his constitutional right to present a defense. A defendant has the right to present a defense. See

*People v Kurr*, 253 Mich App 317, 326; 654 NW2d 651 (2002). Our Supreme Court has stated that "[a]lthough the right to present a defense is a fundamental element of due process, it is not an absolute right. The accused must still comply with 'established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence.' " *People v Hayes*, 421 Mich 271, 279; 364 NW2d 635 (1984), quoting *Chambers v Mississippi*, 410 US 284, 302; 93 S Ct 1038; 35 L Ed 2d 297 (1973). In this case, the recording of the jail interview was not admissible under the "established rules of evidence" because it was an out-of-court statement made by Berg, and was not admissible under any of the hearsay exceptions. See MRE 801(c) and MRE 803.

The trial court did not err by excluding this evidence.

Affirmed.

/s/ Michael F. Gadola
/s/ Joel P. Hoekstra
/s/ Michael J. Kelly