*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JOHN ANTONYA MOSS,

Defendant-Appellant.

FOR PUBLICATION
September 10, 2020
9:00 a.m.

No. 338877
Berrien Circuit Court
LC No. 2015-005091-FH

Before: SHAPIRO, P.J., and SERVITTO and LETICA, JJ.

SHAPIRO, P.J.

Defendant pleaded no contest to third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(d) (related by blood or affinity and sexual penetration occurs) against his adoptive sister (complainant). After being sentenced to 6 to 15 years' imprisonment, defendant later moved to withdraw his plea on the grounds that it lacked an adequate factual basis, arguing that although he and the complainant shared an adoptive parent, they were not related "by blood or affinity." The trial court denied the motion, and we denied defendant's application for leave to appeal. Defendant applied for leave to appeal in the Michigan Supreme Court, which, after hearing argument on the application, remanded the case to us for consideration as on leave granted. For the reasons stated in this opinion, we affirm the trial court's denial of defendant's motion to withdraw his plea.

## I. FACTS & PROCEDURAL HISTORY

Defendant and complainant were legally adopted out of the foster care system by a single woman. At the time of the offense that occurred in the family home, defendant was 25 years old and complainant was 17 years old. It is unclear from the record whether defendant was living at the family home or was just visiting. In any event, defendant told the police that he climbed through the bathroom window at 5:00 a.m. because no one answered the door. It is undisputed that defendant then went to complainant's bedroom and sexually penetrated her. Complainant went to the hospital and reported that she had been sexually assaulted by her brother; defendant maintains that the sex was consensual.

-1-

Defendant was arrested and charged, as a habitual offender, with resisting and obstructing an officer, possession of marijuana (second offense), and two counts of CSC-III (related by blood or affinity, and using force or coercion contrary to MCL 750.520d(1)(b)). The prosecution agreed to dismiss the charges of resisting and obstructing, possession of marijuana, the CSC-III count involving force or coercion, and the habitual-offender status in exchange for defendant entering a no-contest plea to the CSC-III charge based on relation by blood or affinity. The prosecution also agreed to recommend a minimum sentence of 6 years' imprisonment. The trial court accepted defendant's plea on the basis that he was related to complainant by affinity.

After sentencing, defendant was appointed appellate counsel and moved to withdraw his no-contest plea. He argued that there was no factual basis supporting the CSC-III conviction because adoptive siblings are not related by blood or affinity, relying primarily on *People v Zajaczkowski*, 493 Mich 6; 825 NW2d 554 (2012). Defendant also asserted that his trial counsel was ineffective for advising him that he could be found guilty of CSC-III even if the jury agreed that the encounter with complainant was consensual. In a written opinion and order, the trial court determined that adoptive siblings are related by affinity and denied defendant's motion to withdraw. As noted, we denied leave to appeal and so now consider the issue for the first time.[1]

In remanding the case to this Court, the Supreme Court directed us to

> specifically address whether a family relation that arises from a legal adoption, see MCL 710.60(2) (" . . . After entry of the order of adoption, there is no distinction between the rights and duties of natural progeny and adopted persons . . . ") (1) is effectively a "blood" relation, as that term is used in MCL 750.520b – MCL 750.520e; or (2) is a relation by "affinity," as that term is used in MCL 750.520b – MCL 750.520e, see *Bliss v Caille Bros Co*, 149 Mich 601, 608; 113 NW 317 (1907); *People v Armstrong*, 212 Mich App 121; 536 NW2d 789 (1995); *People v Denmark*, 74 Mich App 402; 254 NW2d 61 (1977). [*People v Moss*, 503 Mich 1009 (2019).]

Having fully reviewed the issue consistent with the Supreme Court's order, we hold that defendant and complainant are effectively related by blood and so there was an adequate factual basis for defendant's no-contest plea.

---

[1] Generally, we review for an abuse of discretion a trial court's denial of a defendant's motion to withdraw a plea. *People v Fonville*, 291 Mich App 363, 376; 804 NW2d 878 (2011). However, whether there was a sufficient factual basis for defendant's plea turns solely on statutory interpretation, which is a question of law reviewed de novo. *People v Willams*, 491 Mich 164, 169; 814 NW2d 270 (2012). The goal of statutory interpretation is to discern and give effect to the Legislature's intent. *People v Flick*, 487 Mich 1, 10; 790 NW2d 295 (2010).

## II. ANALYSIS

### A. BLOOD

Multiple CSC offenses include as an element or alternate element of the offense that the defendant was related to the complainant "by blood or affinity" to either the third or fourth degree. See MCL 750.520b–MCL 750.520e. In this case, defendant pleaded no contest to CSC-III contrary to MCL 750.520d(1)(d), which prohibits a person from engaging in sexual penetration with another person who "is related to the actor by blood or affinity to the third degree and the sexual penetration occurs under circumstances not otherwise prohibited by this chapter."

Section 60 of the Michigan Adoption Code, MCL 710.21 *et seq.*, is "commonly referred to as the effect-of-adoption statute." *Jones v Slick*, 242 Mich App 715, 736; 619 NW2d 733 (2000). In pertinent part, MCL 710.60 provides:

> (1) After the entry of an order of adoption, if the adoptee's name is changed, the adoptee shall be known and called by the new name. The person or persons adopting the adoptee then become the parent or parents of the adoptee under the law *as though the adopted person had been born to the adopting parents* and are liable for all the duties and entitled to all the rights of parents.

> (2) After entry of the order of adoption, *there is no distinction between the rights and duties of natural progeny and adopted persons*, and the adopted person becomes an heir at law of the adopting parent or parents and an heir at law of the lineal and collateral kindred of the adopting parent or parents. After entry of the order of adoption, . . . an adopted child is no longer an heir at law of a parent whose rights have been terminated under this chapter or chapter XIIA or the lineal or collateral kindred of that parent . . . . [Emphasis Added.]

We have explained that

> [t]he effect of [MCL 710.60(1)] is to make the adopted child, as much as possible, a natural child of the adopting parents, and to make the adopting parents, as much as possible, the natural parents of the child. The Michigan adoption scheme expresses a policy of severing, at law, the prior, natural family relationship and creating a new and complete substitute relationship after adoption. [*In re Toth*, 227 Mich App 548, 553; 577 NW2d 111 (1998).]

By virtue of MCL 710.60, "it is as though [the adopted children] had been born to [the adoptive parent.]" *Wilson v King*, 298 Mich App 378, 382; 827 NW2d 203 (2012).

It is clear therefore that, under the Adoption Code, both defendant and complainant are treated as the natural progeny of their adoptive mother. The former biological ties of defendant and complainant were each severed by adoption and a completely new relationship was substituted. Given that the law treats both defendant and complainant as biological children of the adoptive mother, it follows that a constructive biological relationship exists between them as well. Each adopted child is placed in the lineage of the adoptive parent, meaning that, by law, the

children share a common ancestor. Accordingly, we conclude that siblings by adoption are effectively related by blood as that term is used in MCL 750.520(d)(1)(d).

We reject defendant's argument that *Zajaczkowski* compels a different result. First, if that was true, it is difficult to see why the Supreme Court would remand the case to us rather than resolving the case by order. Second, the facts in *Zajaczkowski* presented a very different question. In that case, there was neither a biological relationship nor a definitive legal relationship between the defendant and the complainant. The defendant was born during the marriage of his mother to the complainant's father. *Zajaczkowski*, 493 Mich at 9. Although the complainant's father was identified as defendant's legal father in the divorce judgment, a DNA test later established that the complainant's father was not the defendant's biological father. *Id*. In our review of the case, we concluded that MCL 552.29's presumption of legitimacy to all children born to a marriage controlled and noted that the defendant did not have standing to rebut that presumption. *Id*. at 11-12. The Supreme Court rejected that view, finding that "nothing in the language of MCL 750.520b(1)(b)(*ii*) indicates that a relationship by blood can be established through this presumption." *Id*. at 14. Further, the Court "decline[d] to conclude as a matter of law that defendant shares a common ancestor with the victim and is thereby related to the victim by blood merely because defendant may be considered the issue of his mother's marriage to the victim's father for legitimacy purposes." *Id*. at 15.

The Supreme Court made clear that the presumption of legitimacy under MCL 552.29 is just that: a presumption that can be rebutted. The presumption is not conclusive proof of a biological relationship, although "in the absence of a determinative DNA test, the prosecution may use evidence that a person was born during a marriage as evidence that the defendant is related to the victim by blood . . . ." *Zajaczkowski*, 493 Mich at 15 n 20. But in cases where the lack of a biological relationship is established by a DNA test, as in *Zajaczkowski*, the presumption of legitimacy carries no weight for purposes of showing a blood relationship under the CSC statutes. By contrast, the familial relationship established by adoption is *conclusive* rather than presumptive. The Adoption Code creates an unrebuttable familial relationship between children adopted into the same family. By law, adoptive children effectively become the biological children of the adoptive parent, and the necessary implication is that the constructive biological relationship extends between adoptive siblings.

Defendant specifically relies on footnote 18 in *Zajaczkowski*, which can be read to suggest that relations arising by adoption do not constitute blood relationships for purposes of MCL 750.520b–MCL 750.520e. See *Zajaczkowski*, 493 Mich at 14 n 18. However, as noted, *Zajaczkowski* did not involve an adopted family member and there was no argument made regarding the effect of the Adoption Code. Given that, we view footnote 18 as dicta, at least until such time as the Supreme Court directs us otherwise. See *People v Borchard-Ruhland*, 460 Mich 278, 286 n 4; 597 NW2d 1 (1999) ("It is a well-settled rule that obiter dicta[, i.e., a statement not necessary to the determination of the case,] lacks the force of an adjudication and is not binding under the principle of stare decisis.").

Further, we think it is highly unlikely that the Legislature intended to treat adoptive siblings different than biological siblings for purposes of the CSC statutes. We reached a similar conclusion in *Armstrong*, 212 Mich App 121, in which we were tasked with deciding whether stepsiblings were related by affinity under the CSC statutes. We reasoned in part:

In looking to the object of the second-degree criminal sexual conduct statute and the harm it is designed to remedy, and in applying a reasonable construction that best accomplishes the purpose of that statute in this case, we are persuaded that the term "affinity" encompasses the relation between a stepbrother and a stepsister. If the term were not so construed, then the first- and second-degree criminal sexual conduct statutes would impose a penalty more severe where the perpetrator sexually assaulted a spouse's brother or sister than where the perpetrator sexually assaulted a stepbrother or stepsister. In this time of divorce, remarriage, and extended families, we see no reason why the Legislature would give enhanced protection to a victim related to a perpetrator as an in-law but not to a victim related to a perpetrator as a stepbrother or stepsister. Thus, defining the term "affinity" to encompass the relation between a stepbrother and a stepsister avoids a construction of the second-degree criminal sexual conduct statute that would yield absurd results. [*Id*. at 128-129.]

We find this reasoning applicable to the case at hand. That is, we can discern no reason why the Legislature would have intended to afford greater protection to persons committing sex crimes against adoptive rather than biological siblings. Siblings, whether adoptive or biological, are the type of potential victims that the statute aims to protect because there exists special relationship between them that is vulnerable to exploitation. See *id*. at 128 ("In fashioning the criminal sexual conduct statute, MCL 750.520a *et seq*. . . .; the Legislature intended to protect young persons from sexual contact by persons with whom they have a special relationship, such as relatives.").[2]

In sum, because adoptive siblings are effectively related by blood through the Adoption Code, there was a sufficient factual basis supporting defendant's no-contest plea to CSC-III on the basis of relation by blood or affinity, and the trial court did not err by denying defendant's motion to withdraw his plea.

## B. AFFINITY

Given our holding that there is effectively a blood relationship in this case, it is not necessary that we decide whether a relationship by affinity also exists. See *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998) ("As a general rule, an appellate court will not decide moot issues."). However, considering the Supreme Court's remand order, we will address the issue.

In 1907, the Supreme Court in *Bliss*, 149 Mich 601, defined "affinity" in the context of judicial disqualification as

---

[2] Defendant argues that MCL 750.520d(1)(d) is not restricted by age, and so the purpose of that statute should not be construed as the protection of young people. However, we are construing a relation by blood as that term is used in MCL 750.520b-MCL 750.520e, which includes provisions that are expressly aimed at protecting minors and other vulnerable persons from sexual contact from relatives.

the relation existing in consequence of marriage between each of the married persons and the blood relatives of the other, and the degrees of affinity are computed in the same way as those of consanguinity or kindred. A husband is related, by affinity, to all the blood relatives of his wife, and the wife is related, by affinity, to all blood relatives of the husband.

Both this Court and the Supreme Court have quoted the *Bliss* definition with approval in CSC cases. See *Denmark*, 74 Mich App at 408; *Zajaczkowski*, 493 Mich at 13-14.

In *Armstrong*, 212 Mich App at 126, however, this Court interpreted the term anew, determining that the *Bliss* definition was not controlling for purposes of "whether the Legislature intended the term 'affinity' to encompass stepbrothers and stepsisters" in the context of applying the CSC statutes. *Armstrong*, 212 Mich App at 126. In holding that stepsiblings were related by affinity, this Court reasoned in part:

> The term "affinity" is "neither an unusual nor esoteric word; nor does that criminal sexual conduct statute use the term in an uncommon or extraordinary context." *Denmark*, [74 Mich App at 408]. *Random House College Dictionary* (rev ed) defines the term "affinity" as a "relationship by marriage or by ties other than those of blood." [*People v Barjas*, 198 Mich App 551, 555; 499 NW2d 396 (1993)]; see also MCL § 8.3a . . . . The common and ordinary meaning of affinity is marriage. *State v CH*, 421 So 2d 62, 63 (Fla App, 1982). The term "step" is defined as "a prefix used in kinship terms denoting members of a family related by the remarriage of a parent and not by blood." *Random House College Dictionary* (rev ed). Thus, pursuant to the rules of statutory construction, it would appear that defendant and the victim were related by affinity because they were family members related by marriage. [*Id*. at 127-128.]

In this case, the trial court relied on the lay dictionary definition quoted in *Armstrong*, i.e., that affinity extends to a relationship by marriage *or by ties other than those of blood*. While this single, broad definition may support extending the term affinity to relationships beyond those arising from marriage, *Armstrong* nonetheless concluded that stepsiblings were related by affinity "because they were family members related *by marriage*." *Id*. at 128 (emphasis added). Thus, regardless of the various definitions, affinity has always been understood so as to exist via a marriage, and we are not aware of any published case holding to the contrary. Here, the relationship of the two adopted children did not arise from a marriage and so it is not a relationship by affinity.

## C. EFFECTIVE ASSISTANCE OF COUNSEL

Lastly, defendant argues that his trial counsel was ineffective for advising him that he could be convicted of CSC-III even if the jury agreed that the sexual encounter was consensual.[3]

---

[3] Because the trial court did not hold an evidentiary hearing, our review of his ineffective assistance of counsel claim is limited to errors apparent on the record. See *People v Payne*, 285 Mich App

However, because we conclude that defendant was effectively related to his adoptive sister by blood, defendant could be convicted under MCL 750.520d(1)(d), which does not require the use of force or coercion. Accordingly, trial counsel's advice was not deficient and defendant's claim of ineffective assistance of counsel is without merit.

Affirmed.

/s/ Douglas B. Shapiro
/s/ Deborah A. Servitto
/s/ Anica Letica

---

181, 188; 774 NW2d 714. To prevail on a claim of ineffective assistance of counsel, a defendant must establish that "(1) the performance of his counsel was below an objective standard of reasonableness under prevailing professional norms and (2) a reasonable probability exists that, in the absence of counsel's unprofessional errors, the outcome of the proceedings would have been different." *People v Sabin (On Second Remand)*, 242 Mich App 242 Mich App 656, 659; 620 NW2d 19 (2000).