# Syllabus

Chief Justice:
Bridget M. McCormack

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

## PEOPLE v MOSS

Docket No. 162208. Argued on application for leave to appeal December 8, 2021. Decided June 10, 2022.

John A. Moss was convicted of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(d) (related by blood or affinity and sexual penetration occurs), after he pleaded no contest to the charge in the Berrien Circuit Court. The charge stemmed from allegations made by defendant's adoptive sister. In exchange for his plea, the court, Donna B. Howard, J., dismissed the other charges that had been brought against defendant, including another count of CSC-III, MCL 750.520d(1)(b) (use of force or coercion), and a fourth-offense habitual-offender enhancement, MCL 769.12. Defendant and the complainant did not have a birth parent in common, but they were both adopted by the same woman. The court used the police report to establish the factual basis for the plea, finding that defendant and the complainant had engaged in sexual intercourse and that they were related as brother and sister by the adoption. After sentencing, defendant moved to withdraw his plea, arguing for the first time that he was not related to the complainant by either blood or affinity. The trial court denied the motion, determining that, although the adoptive siblings were not related by blood, they were related by affinity. Defendant sought leave to appeal in the Court of Appeals; the Court denied the application in an unpublished order entered August 21, 2017 (Docket No. 338877). Defendant sought leave to appeal in the Supreme Court, and after hearing oral argument on the application, the Supreme Court remanded the case to the Court of Appeals for consideration as on leave granted. 503 Mich 1009 (2019). The Supreme Court directed the Court of Appeals to address whether a family relation that arises from a legal adoption is either effectively a blood relation, as that term is used in MCL 750.520b through MCL 750.520e, or a relation by affinity, as that term is used in MCL 750.520b through MCL 750.520e. On remand, the Court of Appeals, SHAPIRO, P.J., and SERVITTO and LETICA, JJ., affirmed the trial court's denial of defendant's motion, reasoning that defendant and the complainant were effectively related by blood. 333 Mich App 515 (2020). Having found that they were related by blood, the Court considered it unnecessary to address whether defendant and the complainant were related by affinity, but it did so anyway because of the remand order and concluded that they were not related by affinity. Defendant again sought leave to appeal in the Supreme Court. The Supreme Court ordered and heard oral argument on whether to grant defendant's application for leave to appeal or take other action, and it directed the parties to submit briefs addressing whether the Court of Appeals erred by concluding that defendant and the

complainant were effectively related by blood for purposes of MCL 750.520d(1)(d), such that there was an adequate factual basis for defendant's no-contest plea. 507 Mich 939 (2021).

In a per curiam opinion signed by Chief Justice MᴄCᴏʀᴍᴀᴄᴋ and Justices Zᴀʜʀᴀ, Vɪᴠɪᴀɴᴏ, Bᴇʀɴsᴛᴇɪɴ, Cʟᴇᴍᴇɴᴛ, and Cᴀᴠᴀɴᴀɢʜ, the Supreme Court, in lieu of granting leave to appeal, *held*:

Persons who are related by adoption but who otherwise do not share an ancestor in common are not related "by blood" for purposes of MCL 750.520d(1)(d), which criminalizes sexual penetration with another person when the other person is related to the actor by blood or affinity to the third degree. Defendant and the complainant, who were adoptive siblings, were not related by blood for purposes of the statute, and the Court of Appeals erred by concluding otherwise. Because the order directing oral argument on the application only asked the parties to address whether defendant and the complainant were related by blood, the Court of Appeals' conclusion that defendant and the complainant were not related by affinity was left undisturbed. Because an adequate factual basis for defendant's plea did not exist in light of the Courts' legal rulings, remand to the trial court for further proceedings was required.

1. MCR 6.302(A) provides that a court may not accept a guilty plea unless the court is convinced that the plea is accurate. A trial court must establish a factual basis for a plea to ensure the plea's accuracy. The factual basis for a plea is insufficient if it does not establish grounds for finding that the defendant committed the crime charged. MCL 750.520d(1)(d) provides that a person is guilty of CSC-III if the person engages in sexual penetration with another person and that other person is related to the actor by blood or affinity to the third degree and the sexual penetration occurs under circumstances not otherwise prohibited by Chapter LXXVI of the Michigan Penal Code, MCL 750.520 *et seq*. In *People v Zajaczkoswski*, 493 Mich 6 (2012), the Supreme Court interpreted the phrase "relationship by blood" as used in the first-degree criminal sexual conduct statute, MCL 750.520b, to mean a relationship between persons arising by descent from a common ancestor or a relationship by birth rather than marriage. That interpretation also applies to the phrase "related to the actor by blood" in MCL 750.520d(1)(d). Because a relationship formed by adoption does not arise by descent from a common ancestor or by birth, persons who are related by adoption but who otherwise do not share an ancestor in common are not related "by blood" for purposes of MCL 750.520d(1)(d).

2. The Court of Appeals' analysis of MCL 710.60 to resolve the issue of whether defendant was related to the complainant for purposes of MCL 750.520d(1)(d) was flawed because (1) numerous sections in the Adoption Code distinguished and continue to distinguish between relationships by blood and relationships by adoption; (2) the Adoption Code can only change the law, not the genetic makeup of an adopted child or the child's adoptive parents, and MCL 710.60 focuses on the rights and duties of adoptive parents and adopted individuals, not on biological makeup; and (3) the Court of Appeals' analysis would impermissibly enlarge the CSC-III statute by creating a constructive crime, allowing prosecution when the actor is only *effectively* related by blood to the complainant rather than *actually* related by blood. Defendant and the complainant were not related by blood because there was no DNA evidence establishing that they were related to the third degree, no evidence that they shared a common ancestor, and no evidence that they were related by birth.

Court of Appeals judgment reversed in part, and case remanded to the trial court.

Justice WELCH, concurring in part and dissenting in part, agreed with the Court's holding that adoptive siblings are not related "by blood" for purposes of MCL 750.520d(1)(d) but wrote separately because, under that statute, the Legislature considers adoptive siblings to be related by affinity. Justice WELCH would have addressed whether adoptive siblings are related by affinity to the third degree for purposes of MCL 750.520d(1)(d) because it involved a controlling legal issue for which the Court could have provided a solution. The term "affinity" is defined as a relationship by marriage or by ties other than blood. In *People v Armstrong*, 212 Mich App 121 (1995), the Court of Appeals applied that definition to conclude that stepsiblings were related by affinity under the criminal sexual conduct statutes. The *Armstrong* rationale dictates that adoptive relationships are included within the term "affinity" as used in MCL 750.520d(1)(d); the Court of Appeals erred in this case by applying the *Armstrong* reasoning to the "blood" prong in MCL 750.520d(1)(d), instead of to the "affinity" prong. It would be patently absurd to hold that the Legislature intended what is essentially an incest statute to cover relationships between stepsiblings and not adoptive siblings. Thus, for purposes of MCL 750.520d(1)(d), "affinity" includes both step and adopted relationships. A review of the historical amendments of the criminal sexual conduct act supports that the drafters omitted the word "adoption" in the statutes concerning criminal sexual conduct with the understanding that those relationships would fall within the imprecise term "affinity." Moreover, defendant failed to offer any plausible, rational basis for enacting a criminal sexual conduct statute that would extend to step relationships but not to adoptive relationships.

# OPINION

Chief Justice:
Bridget M. McCormack

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch

FILED June 10, 2022

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

No. 162208

JOHN ANTONYA MOSS,

Defendant-Appellant.

BEFORE THE ENTIRE BENCH

PER CURIAM.

At issue in this case is whether adopted siblings who do not share a common ancestor are related "by blood" for purposes of the crime of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(d). We hold that such persons are not related "by blood" under the statute. As a result, there was not an adequate factual basis for defendant's

no-contest plea.[1]  We reverse, in part, the judgment of the Court of Appeals and remand to the circuit court.

## I.  FACTS AND PROCEDURAL HISTORY

Defendant, John Moss, was charged as a fourth-offense habitual offender with two counts of CSC-III, one for being related to the complainant by blood or affinity to the third degree, contrary to MCL 750.520d(1)(d), and one for using force or coercion, contrary to MCL 750.520d(1)(b).[2]  At the time of the offense, defendant was 25 years old, and the complainant for the CSC-III charges, his adoptive sister, was 17 years old.  Defendant and the complainant do not have a birth parent in common, but they were both adopted by the same woman.  The complainant alleged that in November 2015 she and defendant engaged in sexual acts; the complainant reported that these act were not consensual, while defendant claimed that they were.

In exchange for dismissing all other charges against him and the fourth-offense habitual-offender enhancement, defendant pleaded no contest to the CSC-III count under MCL 750.520d(1)(d).  The parties agreed with the trial court's suggestion to use the police report to establish a factual basis for the plea.  Relying on that report, the court found that defendant and the complainant engaged in sexual intercourse and "that they are related to the third degree by adoption as brother and sister."

---

[1] We leave undisturbed the Court of Appeals' conclusion that defendant and the complainant are not related by affinity.  See *People v Moss*, 333 Mich App 515, 524-526; 963 NW2d 390 (2020).

[2] He was also charged with resisting and obstructing a police officer and possession of marijuana, second offense.

After being sentenced, defendant moved to withdraw his plea, arguing that he was not related to the complainant by either blood or affinity merely because they were both adopted by the same person. The trial court denied the motion. It found that defendant and the complainant were not related "by blood." With regard to relationship by "affinity," the trial court relied on *People v Armstrong*, 212 Mich App 121, 128; 536 NW2d 789 (1995), for the proposition that the term "affinity" described a relationship by either marriage or " 'ties other than those of blood.' " (Citation omitted.) Because defendant and the complainant were adopted by the same woman, the trial court held that they were related by affinity as adoptive brother and sister and that the factual basis for the plea was sufficient. Defendant applied for leave to appeal, and the Court of Appeals denied leave for lack of merit in the grounds presented. *People v Moss*, unpublished order of the Court of Appeals, entered August 21, 2017 (Docket No. 338877).

Defendant sought leave to appeal that decision in this Court, and after hearing oral argument on the application, in lieu of granting leave, we remanded to the Court of Appeals for it to address:

> whether a family relation that arises from a legal adoption, see MCL 710.60(2) ("After entry of the order of adoption, there is no distinction between the rights and duties of natural progeny and adopted persons") (1) is effectively a "blood" relation, as that term is used in MCL 750.520b— MCL 750.520e; or (2) is a relation by "affinity," as that term is used in MCL 750.520b—MCL 750.520e, see *Bliss v Caille Bros Co*, 149 Mich 601, 608 (1907); *People v Armstrong*, 212 Mich App 121 (1995); *People v Denmark*, 74 Mich App 402 (1977). [*People v Moss*, 503 Mich 1009 (2019).]

On remand, the Court of Appeals affirmed the trial court's denial of defendant's motion, reasoning that defendant and the complainant were related by blood. *People v Moss*, 333 Mich App 515, 519-524; 963 NW2d 390 (2020). In doing so, the Court of Appeals relied

3

on MCL 710.60. *Id*. at 520. After determining that defendant and the complainant were related by blood, the Court of Appeals explained that it did not need to decide whether they were related by affinity but did so anyway because of the remand order, concluding that they were not related by affinity. *Id*. at 524-526.

Defendant again sought leave to appeal in this Court. We ordered oral argument on the application to consider "whether the Court of Appeals erred in concluding on remand that the defendant and the complainant are effectively related by blood for purposes of MCL 750.520d(1)(d), such that there was an adequate factual basis for the defendant's no-contest plea." *People v Moss*, 507 Mich 939 (2021).

## II. STANDARD OF REVIEW AND INTERPRETIVE PRINCIPLES

"We review for an abuse of discretion a trial court's ruling on a motion to withdraw a plea." *People v Brown*, 492 Mich 684, 688; 822 NW2d 208 (2012). "A trial court necessarily abuses its discretion when it makes an error of law." *People v Rajput*, 505 Mich 7, 11; 949 NW2d 32 (2020) (citation and quotation marks omitted). We review de novo questions of law, such as the interpretation and application of statutes. *People v Kennedy*, 502 Mich 206, 213; 917 NW2d 355 (2018). "Our goal in interpreting a statute is to give effect to the intent of the Legislature as expressed in the statute's language." *People v Garrison*, 495 Mich 362, 367; 852 NW2d 45 (2014). "Absent ambiguity, we assume that the Legislature intended for the words in the statute to be given their plain meaning, and we enforce the statute as written." *Id*.

4

## III. ANALYSIS

A court may not accept a guilty plea unless it is convinced that the plea is accurate. MCR 6.302(A). To ensure the accuracy of a plea, a trial court must establish a factual basis for the plea. *People v Pointer-Bey*, 321 Mich App 609, 616; 909 NW2d 523 (2017), citing MCR 6.302(D). The factual basis is insufficient if it does "not establish grounds for finding that defendant committed the crime charged . . . ." *People v Mitchell*, 431 Mich 744, 748; 432 NW2d 715 (1988). In the present case, defendant pleaded no contest to CSC-III, contrary to MCL 750.520d(1)(d). The statute, which is part of the Michigan Penal Code, MCL 750.1 *et seq.*, provides, in relevant part:

> (1) A person is guilty of criminal sexual conduct in the third degree if the person engages in sexual penetration with another person and if any of the following circumstances exist:
>
> * * *
>
> (d) That other person is related to the actor by blood or affinity to the third degree and the sexual penetration occurs under circumstances not otherwise prohibited by this chapter. [MCL 750.520d.]

The statute does not define the word "blood" or the phrase "related to the actor by blood." We have previously interpreted these terms in the statute criminalizing criminal sexual conduct in the first degree, MCL 750.520b. See *People v Zajaczkowski*, 493 Mich 6, 13; 825 NW2d 554 (2012).[3] We noted, "A relationship by 'blood' is defined as 'a relationship between persons arising by descent from a common ancestor' or a relationship 'by birth rather than by marriage.' " *Id.*, quoting *Black's Law Dictionary* (8th ed), p 182,

---

[3] Although some of the other elements differ between MCL 750.520b and MCL 750.520d, the relationship elements are sufficiently similar such that *Zajaczkowski* is relevant to determining the proper definition of the phrase in this case.

5

and *Random House Webster's College Dictionary* (2001), p 145.[4] The definitions cited in *Zajaczkowski* are applicable to this case. A relationship formed by adoption does not arise by descent from a common ancestor or by birth. Therefore, under the ordinary meaning of the statutory language, individuals related by adoption are not related by blood.

Instead of first looking at the plain meaning of MCL 750.520d(1)(d), the Court of Appeals in this case looked at MCL 710.60,[5] which states, in relevant part:

> (1) After the entry of an order of adoption, if the adoptee's name is changed, the adoptee shall be known and called by the new name. The person or persons adopting the adoptee then become the parent or parents of the adoptee under the law as though the adopted person had been born to the adopting parents and are liable for all the duties and entitled to all the rights of parents.

> (2) After entry of the order of adoption, there is no distinction between the rights and duties of natural progeny and adopted persons, and the adopted person becomes an heir at law of the adopting parent or parents and an heir at law of the lineal and collateral kindred of the adopting parent or parents.

From the statute, the Court of Appeals concluded that "[t]he former biological ties of defendant and complainant were each severed by adoption, and a completely new relationship was substituted." *Moss*, 333 Mich App at 521. For this reason, it determined "that a constructive biological relationship exists between" defendant and the complainant and that the two are "effectively related by blood" for purposes of MCL 750.520d(1)(d). *Id*.

---

[4] Although different in their wording, the definitions have no practical difference because they both focus on a biological relationship. Therefore, it is unnecessary to determine whether "by blood" is a term of art, and it is proper to consult both lay and legal dictionaries. See *Sanford v Michigan*, 506 Mich 10, 21 n 23; 954 NW2d 82 (2020).

[5] We did highlight this statute in our remand order.

The Court of Appeals' analysis is flawed in a number of respects. First, numerous sections in the Adoption Code distinguished and continue to distinguish between relationships by blood and relationships by adoption.[6] The Legislature has also continued this distinction in defining "related" and "relative" since MCL 710.60 was enacted.[7] "As a general rule, we must give effect to every word, phrase, and clause and avoid an interpretation that would render any part of the statute surplusage or nugatory." *People v Arnold*, 508 Mich 1, 23; 973 NW2d 36 (2021) (citations, quotation marks, and brackets omitted). The Legislature would have no need to use both by "blood" and "adoption" in defining "relative" or "related" if MCL 710.60 has the effect that the Court of Appeals concluded it does.

Second, the Adoption Code can only change the law, not the genetic makeup of an adopted child or his adoptive parents. The Court of Appeals in this case relied on *In re Toth*, 227 Mich App 548, 553; 577 NW2d 111 (1998), for the following proposition:

---

[6] See, e.g., MCL 710.22(t) (defining "relative" as someone related "within the fifth degree by marriage, blood, or adoption"); MCL 710.26(2) ("This subsection also applies to . . . the adoption of a child related to the petitioner within the fifth degree by marriage, blood, or adoption."); MCL 710.27(6) (stating that the subsection does not apply to the adoption of a child related "within the fifth degree by marriage, blood, or adoption").

[7] See, e.g., MCL 205.27a(12) ("[A] person is related to an individual if that person is a spouse, brother or sister, whether of the whole or half blood or by adoption, ancestor, lineal descendant of that individual or related person . . . ."); MCL 333.21311a(8)(b) (defining "related" as "any of the following personal relationships by marriage, blood, or adoption: spouse, child, parent, brother, sister, grandparent, grandchild, aunt, uncle, stepparent, stepbrother, stepsister, or cousin"); MCL 400.112g(6)(c) (defining "caretaker relative" as "any relation by blood, marriage, or adoption who is within the fifth degree of kinship to the recipient"); MCL 554.524(3) (defining "member of the minor's family" as "the minor's parent, stepparent, spouse, grandparent, brother, sister, uncle, or aunt, whether of the whole or half blood or by adoption").

> "[T]he effect of [MCL 710.60(1)] is to make the adopted child, as much as possible, a natural child of the adopting parents, and to make the adopting parents, as much as possible, the natural parents of the child. The Michigan adoption scheme expresses a policy of severing, at law, the prior, natural family relationship and creating a new and complete substitute relationship after adoption." [*Moss*, 333 Mich App at 520 (second alteration in original), quoting *In re Toth*, 227 Mich App at 553.]

The Court of Appeals focused on the second sentence, concluding that adoption substitutes a completely new relationship for the old biological relationship. *Moss*, 333 Mich App at 521. In doing so, the Court ignored the first sentence, which recognizes that the effect of MCL 710.60(1) is not to *actually* make the adopted child a biological child of the adopted parents.[8] Rather, the statute focuses on the rights and duties and not the biological makeup.[9] An adoptee has the same rights and duties as the natural progeny of the adoptive parents. But nothing in MCL 710.60 states that an adopted individual will be

---

[8] We certainly do not mean to discount the importance of adoptive relationships. Indeed, we are well aware of the numerous benefits of adoption—not only for the children and parents in adoptive relationships but also for their extended families and for society as a whole. See, e.g., *Sharon S v San Diego Co Superior Court*, 31 Cal 4th 417, 438; 73 P3d 554 (2003) (recognizing that there are "nonlegal benefits of adoption for children, parents, and society as a whole"); *In re Johnson*, 480 BR 305, 312 (Bankr ND Ill, 2012) (discussing studies showing the social benefits of adoption).

[9] It bears noting that MCL 710.60(3) refers specifically to orders for grandparenting time, which are governed by MCL 722.27b. MCL 722.27b(5) distinguishes between grandparents who are "the natural or adoptive parent" of the parent of the child in question, which indicates a difference between biological and adoptive relationships. Although MCL 722.27b(13) states that adoption of a child *generally* terminates the right of a grandparent to commence an action for grandparenting time, it goes on to state that, under certain circumstances, a grandparent may still commence such an action even after an adoption. That MCL 710.60 specifically refers to MCL 722.27b demonstrates that MCL 710.60 also recognizes that there is a difference between biological and adoptive relationships.

subject to criminal prosecutions as if the individual were a blood relative of the individual's adoptive parents.

The analysis in *Zajaczkowski* confirms this point. There, the defendant and the victim were not biologically related, but the prosecution argued that they were related because the defendant had been born while his mother was married to the victim's biological father. *Zajaczkowski*, 493 Mich at 9. The Court of Appeals had acknowledged the plain meaning of "by blood or affinity," but it went on to apply the civil presumption of legitimacy—i.e., that the child was a product of the marriage—to conclude that the defendant and victim were related "by blood" for purposes of MCL 750.520b. *Id*. at 14.[10]

We reversed, rejecting the use of the presumption to create a blood relationship by legal fiction. DNA evidence showed that the victim's father was not the defendant's biological father; the two did "not share a relationship arising by descent from a common ancestor, and they [were] not related by birth." *Id*. As a result, we concluded that the

---

[10] Specifically, the Court of Appeals had relied on MCL 552.29 (stating with respect to divorce cases that "the legitimacy of all children begotten before the commencement of any action under this act shall be presumed until the contrary be shown") and cases from this Court involving the Paternity Act and Child Custody Act, which stood "for the proposition that a putative biological father lacks standing to even bring an action to establish paternity unless there has been some prior court determination that the child was not the issue of the marriage." *Zajaczkowski*, 493 Mich at 11 (citation, quotation marks, and brackets omitted), citing *Barnes v Jeudevine*, 475 Mich 696; 718 NW2d 311 (2006), *In re KH*, 469 Mich 621; 677 NW2d 800 (2004), and *Girard v Wagenmaker*, 437 Mich 231; 470 NW2d 372 (1991). Relying on MCL 700.2114(1)(a) and MCL 700.2114(5), which "incorporate the presumption of legitimacy and the standing requirement into intestate-succession disputes," the Court of Appeals concluded that the defendant lacked standing to challenge the presumption of legitimacy, which meant that he and the victim were related by blood as a matter of law. *Zajaczkowski*, 493 Mich at 11-12.

9

defendant was "not related to the victim by blood to the fourth degree." *Id*. Anticipating the present dilemma, we noted in a footnote:

> The prosecution has raised the argument that this interpretation [of MCL 750.520b(1)(b)(*ii*)] will result in unintended consequences regarding adopted children because if the blood relationship element can only be established through a biological relationship, then a sexual penetration committed by a member of an adoptive family against an adopted minor child may not be punishable under MCL 750.520b(1)(b)(*ii*). While we acknowledge that the prosecution raises valid policy concerns, such policy concerns are best left to the Legislature to address. It is this Court's duty to enforce the clear statutory language that the Legislature has chosen. [*Zajaczkowski*, 493 Mich at 14 n 18.]

We rejected the reliance on the civil presumption of legitimacy and criticized the Court of Appeals for going "beyond the statute's language and chang[ing] the ordinary meaning of the statute's terms by adding language that the Legislature did not include." *Id*. at 14-15.

Finally, we believe the interpretation of MCL 750.520d adopted by the Court of Appeals would create an impermissible constructive crime. A constructive crime is one that is " 'built up by courts with the aid of inference, implication, and strained interpretation . . . .' " *People v Olson*, 293 Mich 514, 515; 292 NW 860 (1940), quoting *Ex parte McNulty*, 77 Cal 164, 167; 19 P 237 (1888).[11] Michigan does not recognize constructive crimes, and we have previously characterized them as " 'repugnant to the spirit and letter of English and American criminal law.' " *Olson*, 293 Mich at 515, quoting *Ex parte McNulty*, 77 Cal at 168. In the present case, the Court of Appeals did not find that defendant and the complainant were *actually* related "by blood." Rather, it determined

---

[11] See also *Black's Law Dictionary* (11th ed), pp 466-467 (defining the term as "[a] crime that is built up or created when a court enlarges a statute by altering or straining the statute's language, esp. to drawing unreasonable implications and inferences from it").

that defendant "*effectively*" became the biological child of his adoptive mother and that a "*constructive* biological relationship" existed between defendant and the complainant. *Moss*, 333 Mich App at 522 (emphasis added). By doing so, the Court of Appeals enlarged the CSC-III statute and strained its interpretation, impermissibly creating a constructive crime as applied to this defendant and others similarly situated.[12]

Applying this analysis to the present case leads to the conclusion that defendant and the complainant are not related by blood. There is no DNA evidence establishing that defendant and the complainant are related to the third degree. Defendant and the complainant do not share a common ancestor. And they are not related by birth. Just as it was improper to rely on the civil presumption of legitimacy to interpret MCL 750.520b, it was improper for the Court of Appeals to rely on MCL 710.60 in this case. By doing so, "the Court of Appeals went beyond the statute's language and changed the ordinary meaning of the statute's terms by adding language that the Legislature did not include." *Zajaczkowski*, 493 Mich at 14-15. As we did in *Zajaczkowski*, we again acknowledge that there are valid policy concerns that this statute fails to provide adequate protection for adoptive siblings; however, we can only reiterate that those concerns are for the Legislature to address.

---

[12] Other courts have rejected similar attempts to criminalize sexual conduct between persons related by adoption when the statute does not expressly prohibit such conduct between those related by adoption. See 41 Am Jur 2d, Incest, § 17, p 356, citing *In re Adoption of Adult Anonymous*, 435 NYS2d 527 (Fam Ct, 1981), and *State v Bale*, 512 NW2d 164 (SD, 1994).

## IV. CONCLUSION

For these reasons, we hold that persons who are related by adoption but who otherwise do not share an ancestor in common are not related "by blood" for purposes of MCL 750.520d(1)(d).[13]  As a result, there was not an adequate factual basis for defendant's plea of no contest.  We reverse, in part, the judgment of the Court of Appeals and remand to the circuit court for further proceedings not inconsistent with this opinion.

Bridget M. McCormack
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh

---

[13] We decline to reach the issue addressed by the dissent—i.e., whether defendant and the complainant are related by affinity—because our order directing oral argument on the application only asked the parties to address whether defendant and the complainant are related by blood. *Moss*, 507 Mich at 939.

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                                        No. 162208

JOHN ANTONYA MOSS,

      Defendant-Appellant.

_____

WELCH, J. (*concurring in part and dissenting in part*).

I concur in the Court's holding that adoptive siblings are not related "by blood" for purposes of MCL 750.520d(1)(d). I write separately because I conclude that the Legislature considered adoptive siblings to be related by "affinity."[1]

MCL 750.520d(1) provides, in relevant part, that a person is guilty of criminal sexual conduct in the third degree if the person engages in sexual penetration with another person and "[t]hat other person is related to the actor by blood or affinity to the third degree and the sexual penetration occurs under circumstances not otherwise prohibited" by

_____

[1] The prosecutor did not file a separate application for leave to appeal the Court of Appeals' holding on the meaning of "affinity." However, this Court has stated that when "a controlling legal issue is squarely before this Court, . . . the parties' failure or refusal to offer correct solutions to the issue [does not] limit[] this Court's ability to probe for and provide the correct solution." *Mack v Detroit*, 467 Mich 186, 206-207; 649 NW2d 47 (2002). In this case, the issue "squarely before this Court" is whether the relationship between adoptive siblings is sufficient to satisfy MCL 750.520d(1)(d).

Chapter LXXVI[2] of the Michigan Penal Code. Because of its conclusion that adoptive siblings are related "by blood," the Court of Appeals concluded that "it is not necessary that we decide whether a relationship by affinity also exists." *People v Moss*, 333 Mich App 515, 524; 963 NW2d 390 (2020). The Court of Appeals addressed the issue anyway because this Court had remanded for consideration of the definitions of affinity provided by *Bliss v Caille Bros Co*, 149 Mich 601, 608; 113 NW 317 (1907) ("Affinity is the relation existing in consequence of marriage between each of the married persons and the blood relatives of the other . . . .") and *People v Armstrong*, 212 Mich App 121, 128; 536 NW2d 789 (1995) ("*Random House College Dictionary* (rev ed) defines the term 'affinity' as a 'relationship by marriage or by ties other than those of blood.' ").[3] The Court of Appeals determined that, while *Armstrong* suggested that "affinity" might have a wider, context-dependent meaning than was recognized in *Bliss*, *Armstrong* "nonetheless concluded that stepsiblings were related by affinity 'because they were family members related *by marriage*.' " *Moss*, 333 Mich App at 526, quoting *Armstrong*, 212 Mich App at 128.

In determining that adoptive relationships are relationships "by blood," the Court of Appeals quoted *Armstrong* at length:

---

[2] Chapter LXXVI, MCL 750.520a through MCL 750.520*o*, is the chapter of the Michigan Penal Code that addresses criminal sexual conduct.

[3] The Court of Appeals initially denied defendant's delayed application for leave to appeal his plea-based conviction. *People v Moss*, unpublished order of the Court of Appeals, entered August 21, 2017 (Docket No. 338877). We heard oral argument on the application for leave to appeal, and in lieu of granting leave to appeal, we remanded the case to the Court of Appeals for consideration as on leave granted. *People v Moss*, 503 Mich 1009 (2019).

[W]e think it is highly unlikely that the Legislature intended to treat adoptive siblings differently from biological siblings for purposes of the [criminal sexual conduct] statutes. We reached a similar conclusion in *Armstrong* . . . , in which we were tasked with deciding whether stepsiblings were related by affinity under the [criminal sexual conduct] statutes. We reasoned in part:

> In looking to the object of the second-degree criminal sexual conduct statute and the harm it is designed to remedy, and in applying a reasonable construction that best accomplishes the purpose of that statute in this case, we are persuaded that the term "affinity" encompasses the relation between a stepbrother and a stepsister. If the term were not so construed, then the first- and second-degree criminal sexual conduct statutes would impose a penalty more severe where the perpetrator sexually assaulted a spouse's brother or sister than where the perpetrator sexually assaulted a stepbrother or stepsister. In this time of divorce, remarriage, and extended families, we see no reason why the Legislature would give enhanced protection to a victim related to a perpetrator as an in-law but not to a victim related to a perpetrator as a stepbrother or stepsister. Thus, defining the term "affinity" to encompass the relation between a stepbrother and a stepsister avoids a construction of the second-degree criminal sexual conduct statute that would yield absurd results.

[*Moss*, 333 Mich App at 523, quoting *Armstrong*, 212 Mich App at 128-129.]

I would hold that *Armstrong*'s reasoning dictates that adoptive relationships *are* covered by MCL 750.520d(1)(d), but I would do so under the "affinity" prong that *Armstrong* actually addressed and not the "blood" prong to which the Court of Appeals applied *Armstrong*'s reasoning. *Armstrong* noted that "the term 'affinity' is not capable of a precise definition. Rather, at common law, whether someone was related to another by affinity depended upon the legal context presented." *Armstrong*, 212 Mich App at 125 (citation omitted). I see no reason to prefer, in the context of a criminal statute, the narrow definition of affinity stated in *Bliss*—a case interpreting a judicial disqualification statute— to the dictionary definition stated in *Armstrong*. Expanding upon the reasoning of

3

*Armstrong*, it would be a patently absurd result to hold that the Legislature intended what is essentially an incest statute to cover relationships between stepsiblings and not adoptive siblings. I therefore conclude that the Legislature did not pass such a statute. Instead, it passed a statute that included a broader term—affinity—to allow for inclusion of both step and adopted relationships.

In *Johnson v Recca*, 492 Mich 169, 193-194; 821 NW2d 520 (2012), this Court criticized a dissenting Justice for applying the absurd-results doctrine too liberally:

> To properly invoke the "absurd results" doctrine, the burden rests on the *dissent* to show that it is quite impossible that the Legislature could have intended to exclude replacement services from MCL 500.3110(4), MCL 500.3116(4), MCL 500.3135(3)(c), and MCL 500.3145(1). Rather than shoulder this burden—which might require a serious-minded analysis of the Legislature's policy objectives in enacting the statutes, the political realities and disagreements within the Legislature that adopted the statutes, the necessity for compromise and negotiation leading to enactment of the statutes, and the public impetus behind the statutes—the dissent characterizes our interpretation as "absurd" because the dissent
>
> > can see no logical basis to conclude that the Legislature intended this chaotic and arbitrary approach to the collection of no-fault benefits. . . . The far more reasonable interpretation recognizes that the Legislature intended MCL 500.3135(3)(c) to allow excess expenses for ordinary and necessary services to be recovered in a third-party tort action.

The absurd-results principle has also been criticized by textualists as having "strong intentionalist foundations" inconsistent with "respect for the legislative process," which is characterized by "accommodation, messiness, and compromise." Manning, *The Absurdity Doctrine*, 116 Harv L Rev 2387, 2390-2391 (2003); see also *Barnhart v Sigmon Coal Co, Inc*, 534 US 438, 461; 122 S Ct 941; 151 L Ed 2d 908 (2002) ("The deals brokered during a Committee markup, on the floor of the two Houses, during a joint House and Senate

4

Conference, or in negotiations with the President, however, are not for us to judge or second-guess.").

In other words, the absurd-results doctrine should not be applied merely to question the reasonableness of the Legislature's policy determinations when a plausible, rational basis for the result exists. I agree. But in the present case, it is implausible to suggest that there were any interest groups pressuring the Legislature for a right to engage in sexual conduct with adoptive family members. In 1996, the Legislature amended MCL 750.520d, adding Subdivision (d), to criminalize sexual penetration with another person when "[t]hat other person is related to the actor by blood or affinity to the third degree . . . ." See 1996 PA 155. However, the Legislature had already criminalized, in 1974, sexual penetration and sexual contact with another person when that other person was at least 13 years but less than 16 years of age and the actor was related to the victim by blood or affinity. See MCL 750.520b(1)(b) and MCL 750.520c(1)(b), as enacted by 1974 PA 266. Thus, such conduct was criminalized in 1974—*the same year the Legislature adopted a new "effect of adoption" statute*, MCL 710.60, *that recognized adoption as a total and exclusive replacement of the child's natural family relationships*.[4] The reasonable inference from

_____

[4] Commentators at the time the criminal sexual conduct act, 1974 PA 266, was passed stated that "[u]nder increasing pressure from women's rights groups and other reform organizations, the Michigan legislature has re-evaluated its centenarian rape statute, found it inadequate for the realities of the mid-twentieth century, and enacted a new sexual assault act." Legislative Note, *Michigan's Criminal Sexual Assault Law*, 8 U Mich J L Reform 217 (1974) (citations omitted). That same year, the Legislature replaced the former effect-of-adoption statute—which provided that adoption did not affect a child's right to inherit from "his natural parents"—with current MCL 710.60(2), which provides that "[a]fter entry of the order of adoption, the adopted person shall no longer be an heir at law of his or her natural parents[.]" *In re Adolphson Estate*, 403 Mich 590, 592-593; 271 NW2d 511 (1978) (emphasis omitted), quoting 1974 PA 296. The criminal sexual conduct act and the

5

the "messiness" of the Legislative process is that the statute's drafters omitted the word "adoption" in the statutes concerning criminal sexual conduct with the understanding that adoptive relationships would fall within the imprecise term "affinity," the meaning of which "depend[s] upon the legal context presented." *Armstrong*, 212 Mich App at 125.

This is *not* a conclusion from my own policy preferences. Rather, it is a conclusion from defendant's failure to offer even plausible speculation as to a rational basis for enacting a criminal sexual conduct statute that extends to step relationships but not to adoptive relationships.[5]

In *Green v Bock Laundry Machine Co*, 490 US 504, 505, 509; 109 S Ct 1981; 104 L Ed 2d 557 (1989), the Supreme Court addressed a prior version of FRE 609(a)(1), which, when interpreted literally, required prejudice-balancing before a prior conviction could be admitted to impeach a civil defendant, but the rule did not extend the same protection to a civil plaintiff. The majority, in a lengthy analysis of the history of the rule, determined that language extending the benefit of prejudice-weighing to the "defendant" was intended to

---

new effect-of-adoption provision became effective on the same day, January 1, 1975. 1974 PA 266; 1974 PA 296.

[5] Compare *Chapman v United States*, 500 US 453, 454; 111 S Ct 1919; 114 L Ed 2d 524 (1991), in which the Supreme Court declined to apply the absurd-results doctrine to a statute that imposed a mandatory minimum sentence for distributing more than one gram of a "mixture or substance" containing LSD. The petitioner emphasized that a dose of LSD weighs almost nothing, leading to the absurd and allegedly unconstitutional result that whether a defendant was subject to a minimum sentence could depend on the arbitrary fact of the weight of the paper on which the illegal substance was placed. *Id*. at 463-464. The Supreme Court held that the sentencing scheme was nonetheless rational because, "[b]y measuring the quantity of the drugs according to the 'street weight' of the drugs in the diluted form in which they are sold, rather than according to the net weight of the active component, the statute and the Sentencing Guidelines increase the penalty for persons who possess large quantities of drugs, regardless of their purity." *Id*. at 465.

mean "criminal defendant," leaving neither side of a civil dispute protected by prejudice-weighing. *Id*. at 513-527. Justice Scalia, finding "no reason to believe that any more than a handful of the Members of Congress who enacted Rule 609 were aware of its interesting evolution from the 1942 Model Code," *id*. at 528 (Scalia, J., concurring), emphasized the petitioner's failure to offer any plausible basis for the "absurd, and perhaps unconstitutional, result," *id*. at 504, of a literal interpretation:

> (1) The word "defendant" in Rule 609(a)(1) cannot rationally (or perhaps even constitutionally) mean to provide the benefit of prejudice-weighing to civil defendants and not civil plaintiffs. Since petitioner has not produced, and we have not ourselves discovered, even a snippet of support for this absurd result, we may confidently assume that the word was not used (as it normally would be) to refer to all defendants and only all defendants. [*Id*. at 528-529].

Interpreting the word "defendant" as "criminal defendant" easily avoided the absurdity while doing the "least violence to the text." *Id*. at 529. Likewise, in the context of a criminal statute that prohibits sexual conduct between family members, the term "affinity" bears the meaning of familial relationships created by adoption just as easily as it bears the meaning of familial relationships created by marriage. Neither defendant nor this Court has offered even a snippet of a rational basis for a contrary interpretation. Therefore, we can confidently assume that the word "affinity" was not used as it normally would be to refer to relationships created by marriage and only relationships by marriage.

Elizabeth M. Welch