*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* MCGEE/HILL/TIDWELL, Minors.

UNPUBLISHED
July 14, 2022

No. 359133
Alger Circuit Court
Family Division
LC No. 19-004544-NA

*In re* R. TIDWELL, Minor.

No. 359984
Alger Circuit Court
Family Division
LC No. 19-004544-NA

Before: SAWYER, P.J., and LETICA and PATEL, JJ.

PER CURIAM.

In these consolidated appeals,[1] respondents appeal as of right the trial court's orders terminating their parental rights to their respective children. In Docket No. 359133, the trial court terminated respondent-mother's rights to CM, RH, JM, and RT under MCL 712A.19b(3)(b)(*i*) (parent's act caused injury or abuse), (b)(*ii*) (parent failed to prevent injury or abuse), and (b)(*iii*) (nonparent adult caused injury or abuse). Her parental rights to RH, JM, and RT were also terminated under MCL 712A.19b(3)(c)(*i*) (conditions leading to adjudication continue to exist) and (*ii*) (other conditions exist that cause child to come within court's jurisdiction). Respondent-father's parental rights to RT were also terminated under all five of these statutory grounds.[2]

---

[1] *In re McGee/Hill/Tidwell Minors*, unpublished order of the Court of Appeals, entered February 7, 2022 (Docket Nos. 359133 and 359984).

[2] Respondent-father is RT's father only. The fathers of CM, JM, and RH are not at issue in this appeal.

-1-

Although we agree that a number of errors occurred in these proceedings, we are not persuaded that respondents have established entitlement to appellate relief.

This family moved from Missouri to Michigan in May 2019. A domestic dispute broke out upon their arrival at a family member's Michigan residence. The children were taken into care after both respondents were arrested on felony charges in the wake of this incident. The trial court took jurisdiction in this case on the basis of respondents' admissions regarding the circumstances surrounding their arrests.

While this case was pending, however, the children disclosed allegations of sexual abuse by respondent-father and physical abuse by both respondents, prompting petitioner to seek termination of respondents' parental rights. The principal evidence of physical and sexual abuse came from the children's recorded interviews with Michigan State Police Troopers,[3] which the trial court reviewed off the record by stipulation. Relying primarily on the children's statements in these interviews, the trial court terminated respondents' parental rights as noted above.

## I. PETITIONS SEEKING TERMINATION OF PARENTAL RIGHTS

In their first issue on appeal, respondents seem to challenge the nature of the petitions seeking termination of their parental rights, which were both designated as "amended" petitions. This issue is unpreserved because it was not raised or decided below. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227; 964 NW2d 809 (2020).

We review unpreserved claims of error under the plain-error rule. *In re Beers*, 325 Mich App 653, 677; 926 NW2d 832 (2018). "To avoid forfeiture under the plain-error rule, the proponent must establish that a clear or obvious error occurred and that the error affected substantial rights." *Id.* "[A]n error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *In re Utrera*, 281 Mich App 1, 9; 761 NW2d 253 (2008). Additionally, "the error must have seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings . . . ." *In re Ferranti*, 504 Mich 1, 29; 934 NW2d 610 (2019) (quotation marks and citation omitted; alteration in original).

If during child protective proceedings the petitioner becomes aware of "additional abuse or neglect of a child who is under the court's jurisdiction and . . . that abuse or neglect is substantiated as provided in the child protection law, 1975 PA 238, MCL 722.621 to 722.638, the agency shall file a supplemental petition with the court." MCL 712A.19(1). Under MCR 3.977(F), "[t]he court may take action on a supplemental petition that seeks to terminate the parental rights of a respondent over a child already within the jurisdiction of the court on the basis of one or more circumstances new or different from the offense that led the court to take jurisdiction."

Petitioner filed three petitions in this case. The first alleged that both respondents had been arrested, that the children witnessed respondent-mother commit domestic violence, and that both respondents used drugs in the children's presence. The second petition added allegations that

---

[3] Some of the allegations were repeated by witnesses at the termination hearings, but this testimony all involved hearsay.

respondent-father sexually abused CM, JM, and RT, that respondent-mother physically abused RH, and that respondent-father physically abused all the children. The third petition added allegations that respondent-mother tested positive for methamphetamine in July 2020 and August 2020. All three petitions were submitted using the petition form approved by the State Court Administrative Office, which includes checkboxes below the title that can be used to identify the petition as amended or supplemental. The "amended" checkbox was marked on both the second and third petitions.

Although the precise nature of respondents' first issue is unclear, it appears that they take issue with the trial court's having acted on the amended petitions seeking termination of their parental rights on the basis of circumstances beyond the conditions that led to the initial adjudication.[4] Petitioner reasons that the second and third petitions were simply mislabeled and that the misnomer was harmless. We agree with petitioner.

MCR 3.903(C) defines certain terminology used in child protective proceedings. " 'Amended petition' means a petition filed to correct or add information to an original petition . . . before it is adjudicated." MCR 3.903(C)(2). In pertinent part, "[s]upplemental petition" means

> (a) a written allegation, verified in the manner provided in MCR 1.109(D)(3), that a parent, for whom a petition was authorized, has committed an additional offense since the adjudication of the petition, or

> * * *

> (c) a written allegation, verified in the manner provided in MCR 1.109(D)(3), that requests the court terminate parental rights of a parent or parents under MCR 3.977(F) or MCR 3.977(H). [MCR 3.903(C)(13).]

Neither the second nor third petitions could fall within the definition of an amended petition because they did not correct or add information to the initial petition before the adjudication. The second petition requested termination of respondents' parental rights, citing the allegations of physical and sexual abuse, which were not included in the initial petition. Because petitioner's request for termination was based on new or different circumstances, the request was made under MCR 3.977(F). The second petition should, therefore, have been titled a supplemental petition in accordance with MCR 3.903(C)(13)(c).[5] The third petition continued to seek termination of respondents' parental rights, adding the new allegations regarding respondent-mother's recent drug use. This falls within the scope of a supplemental petition under both MCR 3.903(C)(13)(a) and (c).

---

[4] To the extent respondents challenge the trial court's reliance on inadmissible evidence, that argument will be addressed in Part II of this opinion.

[5] The second petition could not be a supplemental petition under MCR 3.903(C)(13)(a) because it raised allegations regarding events that occurred before the adjudication.

The last two petitions were erroneously identified as amended, when they should have been designated as supplemental petitions. This error is plain, but respondents offer no argument as to how this error prejudiced them by affecting the trial court proceedings. Respondents were fully aware that petitioner was seeking termination of their parental rights and its reasons for doing so. If the appropriate "supplemental" checkbox had been marked, the proceedings would have continued in the same exact fashion. Respondents have not established plain error affecting their substantial rights on the basis of the mislabeled supplemental petitions.

## II. RECORDED STATEMENTS

Respondents next challenge the admissibility of the children's recorded statements. "A party opposing the admission of evidence must timely object at trial and specify the same ground for objection that it asserts on appeal." *In re Weiss*, 224 Mich App 37, 39; 568 NW2d 336 (1997). Although respondent-mother raised a general objection to petitioner's reliance on hearsay, her objection could not have related to the recorded statements, which did not become known to the parties until later in the hearing. Additionally, respondents' argument on appeal focuses on the admissibility of the recorded statements under MCR 3.972(C)(2), lack of notice, and procedural irregularities—issues not raised by respondents before the trial court. This issue is unpreserved.[6]

We review unpreserved claims of error under the plain-error rule. *In re Beers*, 325 Mich App at 677. "To avoid forfeiture under the plain-error rule, the proponent must establish that a clear or obvious error occurred and that the error affected substantial rights." *Id*. "[A]n error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *In re Utrera*, 281 Mich App at 9. Additionally, "the error must have seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings . . . ." *In re Ferranti*, 504 Mich at 29 (quotation marks and citation omitted; alteration in original).

As noted earlier, when a trial court already has jurisdiction over a child, it is permitted to take action on a supplemental petition seeking termination of parental rights "on the basis of one or more circumstances new or different from the offense that led the court to take jurisdiction." MCR 3.977(F). Concerning such proceedings, the court rules provide:

> (1) The court must order termination of the parental rights of a respondent, and must order that additional efforts for reunification of the child with the respondent must not be made, if

---

[6] We further note that when the termination hearing resumed after the recordings had been acquired, the parties stipulated to admission of the recordings and agreed that they could be reviewed by the trial court off the record. Thus, this issue is not only unpreserved, but also waived. *Ferranti*, 504 Mich at 33 ("Waiver is the intentional relinquishment or abandonment of a known right[.]") (quotation marks and citation omitted); *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011) ("Respondent may not assign as error on appeal something that she deemed proper in the lower court because allowing her to do so would permit respondent to harbor error as an appellate parachute.").

-4-

(a) the supplemental petition for termination of parental rights contains a request for termination;

(b) at the hearing on the supplemental petition, the court finds on the basis of clear and convincing legally admissible evidence that one or more of the facts alleged in the supplemental petition:

(i) are true; and

(ii) come within MCL 712A.19b(3)(a), (b), (c)(ii), (d), (e), (f), (g), (i), (j), (k), (*l*), or (m); and

(c) termination of parental rights is in the child's best interests. [MCR 3.977(F)(1).]

Because the supplemental petitions sought termination of respondents' parental rights on the basis of circumstances that differed from the circumstances leading to adjudication, petitioner had to establish the grounds for termination by clear and convincing, *legally admissible* evidence. *In re DMK*, 289 Mich App 246, 257; 796 NW2d 129 (2010).

Respondents argue that the trial court erred by admitting the children's out-of-court statements because there is no hearsay exception for a videorecorded statement of a child over the age of 10 or audio-only recorded statements. Respondents rely principally on MCR 3.972(C)(2), which addresses the admissibility of a statement by a child under 10 years of age describing certain forms of abuse. See *In re Martin*, 316 Mich App 73, 80; 896 NW2d 452 (2016) (describing the court rule). Respondents' position is flawed because MCR 3.972(C)(2) governs the use of such statements at trial—not during the disposition phase of child protective proceedings. *Id*. at 82 (noting that MCR 3.972(C)(2)(a) "expressly applies to adjudication trials"). MCL 712A.17b, on the other hand, addresses the admissibility of a child's statement in proceedings other than the adjudication. *Id*.

In pertinent part, the statute states:

(5) A custodian of the videorecorded statement may take a witness's videorecorded statement. The videorecorded statement shall be admitted at all proceedings except the adjudication stage instead of the live testimony of the witness. The videorecorded statement shall state the date and time that the statement was taken; shall identify the persons present in the room and state whether they were present for the entire video recording or only a portion of the video recording; and shall show a time clock that is running during the taking of the statement.

(6) In a videorecorded statement, the questioning of the witness should be full and complete; [and] shall be in accordance with the forensic interview protocol implemented as required by section 8 of the child protection law, 1975 PA 238, MCL 722.628 . . . . [MCL 712A.17b(5) and (6).]

-5-

For purposes of this rule, a "witness" must be an alleged victim of certain types of abuse[7] and be either under 16 years of age or have a developmental disability. MCL 712A.17|b(1)(e) and (2). As this Court explained in *Martin*, 316 Mich App at 82, "MCL 712A.17b(5) not only permits but mandates admission of a videorecorded statement ('shall be admitted') in regard to any proceeding other than one at the adjudication stage, which would necessarily include a termination hearing, as long as the prerequisites set forth in MCL 712A.17b(5) and (6) are satisfied . . . ."

The statements from the three youngest children were captured using audio technology only, rather than by way of videorecording, and therefore did not fall within the scope of MCL 712A.17b. Even if the interviews had been videorecorded, the date and time of those statements were not identified as required by MCL 712A.17b(5), and it is clear from the record that the forensic interview protocol was not strictly followed. At a minimum, Trooper Stacey Rasanen acknowledged that she violated the protocol by questioning the children in uniform and that JM's support person interjected from time to time, contrary to accepted protocol.[8] The statements offered by RH, JM, and RT were not legally admissible under MCL 712A.17b, and their admission was plainly erroneous. But for reasons we will detail below, the erroneous admission of these statements did not affect respondents' substantial rights because there remained sufficient evidence to support termination of respondents' parental rights under several statutory grounds.

CM's interview, on the other hand, fell within the scope of MCL 712A.17b. The interview was videorecorded and marked with a date and timestamp. CM was 14 years old at the time and disclosed, among other things, sexual contact initiated by respondent-father that could constitute criminal sexual assault under MCL 750.520c. Like Trooper Rasanen, Trooper Elizabeth Bourgeois confirmed that she violated the forensic interview protocol by wearing her uniform during the interview, but there was no other suggestion of noncompliance raised by the parties below or on appeal. Considering the totality of the circumstances, we conclude this slight deviation from the accepted forensic interview protocol did not render admission of CM's videorecorded statement clear or obvious error.

Respondents also argue that petitioner failed to give them necessary notice of its intent to introduce the children's statements and that the trial court failed to hold a hearing to determine whether the statements bore adequate indicia of trustworthiness. This aspect of respondents' claim of error is again flawed because it rests on procedures mandated by MCR 3.972(C) and MCR 3.922(F), which both address evidence to be presented at an adjudication trial.

Nonetheless, we note that MCR 3.977(F) includes its own disclosure requirements for a termination hearing conducted pursuant to that rule:

---

[7] The witness must be an alleged victim of child abuse, MCL 750.136b, child sexually abusive activity, MCL 750.145c, criminal sexual conduct, MCL 750.520b to MCL 750.520e, or assault with intent to commit criminal sexual conduct, MCL 750.520g. MCL 712A.17(1)(e) and (2)(a).

[8] Trooper Rasanen may have violated the forensic interview protocol in other ways as well, but the record concerning these issues is unclear. It is unnecessary for us to explore this matter further because the audio-only recordings were inadmissible under MCL 712A.17b in any event.

Parties shall make disclosures as detailed in MCR 3.922(A) at least 21 days prior to the termination hearing and have rights to discovery consistent with that rule. The hearing on a supplemental petition for termination of parental rights under this subrule shall be held within 42 days after the filing of the supplemental petition. The court may, for good cause shown, extend the period for an additional 21 days. [MCR 3.977(F)(2).]

MCR 3.922(A)(1)(a) requires disclosure of "all written or recorded statements and notes of statements made by the juvenile or respondent that are in possession or control of the petitioner of a law enforcement agency . . . ." Such statements "are discoverable as of right in all proceedings and shall be produced no less than 21 days before trial, even without a discovery request[.]" MCR 3.922(A)(1).

Petitioner was unaware that the children's statements had been recorded until Trooper Bourgeois testified at the first termination hearing. Consequently, petitioner did not disclose or produce the recorded statements to respondents before the hearing began. While petitioner's oversight regarding this issue undoubtedly violated MCR 3.977(F)(2), respondents cannot establish that the plain error affected their substantial rights. The parties agreed to move forward with other evidence and return on a later date after the recordings could be obtained. At least some of the recordings were produced by March 1, 2021, at which time the trial court instructed petitioner to make sure all the recording were produced within one week. The latest the recordings could be provided in compliance with the trial court's directive was March 8, 2021, and there has been no suggestion that petitioner failed to comply with this requirement. The termination hearing did not resume until April 9, 2021—more than 21 days after respondents received the recordings. Respondents had the same amount of time contemplated by MCR 3.977(F)(2) in which to review the recordings, prepare to cross-examine the forensic interviewers, and consider any other defensive tactics necessary to rebut the children's statements. There is no reason to believe that petitioner's failure to produce the recordings before the termination hearings began affected the outcome of the proceedings.

## III. STATUTORY GROUNDS

Respondents also argue that without considering the inadmissible recordings, there was insufficient evidence to terminate their parental rights. We disagree.

Before terminating a respondent's parental rights, the trial court must find that the petitioner established at least one statutory ground for termination by clear and convincing evidence. *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011). "This Court reviews for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination." *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014). "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *In re Kaczkowski*, 325 Mich App 69, 74; 924 NW2d 1 (2018) (quotation marks and citation omitted).

The trial court found three grounds for termination of respondents' parental rights to each of their respective children: MCL 712A.19b(3)(b)(*i*), (*ii*), and (*iii*). The trial court also found clear and convincing evidence under MCL 712A.19b(3)(c)(*i*) and (*ii*) for termination of respondent-

mother's parental rights to RH, JM, and RT and for termination of respondent-father's parental rights to RT.

With the exception of MCL 712A.19b(3)(c)(*i*), the trial court's findings regarding each statutory ground related to the allegations of physical injury, physical abuse, and sexual abuse that were presented through the children's statements. But because these allegations involved circumstances that differed from the offense that led the court to take jurisdiction, petitioner was obligated to prove termination was appropriate under MCL 712A.19b(3)(b)(*i*), (*ii*), (*iii*), and (c)(*ii*) using legally admissible evidence. *In re DMK*, 289 Mich App at 257. Only CM's statement was even arguably admissible under MCL 712A.17b, and the trial court's admission of the other children's statements constituted plain error. We must therefore consider whether CM's statement alone supported termination of respondents' parental rights under these four grounds. In doing so, this Court must defer to the trial court's determination that CM was "completely credible." *In re Mota*, 334 Mich App 300, 320; 964 NW2d 881 (2020).

## A. MCL 712A.19b(3)(b)

MCL 712A.19b(3)(b) provides three grounds for termination of parental rights, each predicated on a finding that "[t]he child or a sibling of the child has suffered physical injury or physical or sexual abuse," coupled with additional findings depending on the subdivision of MCL 712A.19b(3)(b) at issue.

Concerning physical injury and abuse, CM indicated that during one of respondents' many fights, RH was struck in the head with a ceramic frog thrown by one of the respondents. The blow caused RH to bleed, but both respondents continued their fight instead of addressing RH's injury. CM also indicated that respondents hit her and RH with a fly swatter or belt, depending on the severity of their misbehavior. JM was only struck with the fly swatter or respondents' hands. Although RT was never hit with objects, respondents smacked him in the mouth with more force than CM considered appropriate for disciplining a baby. CM also saw respondent-father punch RH in the arm with a closed fist. On another occasion, respondent-father pushed CM down because she talked back to him during her punishment. CM scraped her knee when she fell.

CM also disclosed sexual abuse by respondent-father. Specifically, CM said respondent-father grabbed her breasts when she sat on his lap. This happened on a number of occasions. CM feared that respondent-father engaged in similar behavior with JM, but did not actually see respondent-father touch JM inappropriately. Accepting CM's statement as true, the trial court did not clearly err by concluding that CM had been sexually abused and physically injured and that RH, at least, had been physically injured or abused.

### 1. MCL 712A.19b(3)(b)(*i*)

In order to terminate parental rights under MCL 712A.19b(3)(b)(*i*), the court must also find that "[t]he parent's act caused the physical injury or physical or sexual abuse and . . . there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home."

The trial court did not clearly err by terminating respondent-mother's rights to all the children under MCL 712A.19b(3)(b)(*i*). RH suffered a head wound during one of respondents' fights. Although it is unclear which respondent threw the object that hit him, the "absence of definitive evidence regarding the identity of the perpetrator" is not dispositive when the evidence demonstrates that the respondents must have caused or failed to prevent the injury. *In re Ellis*, 294 Mich App 30, 35-36; 817 NW2d 111 (2011). In such circumstances, termination is appropriate under MCL 712A.19b(3)(b)(*i*) or (*ii*) (failure to protect), and this Court will not reverse merely because the evidence is unclear which respondent actually caused the injury. *Id*. The court did not err by concluding that the children would likely be injured in the foreseeable future in respondent-mother's care because CM explained that respondents fought regularly and habitually threw things at each other. The court could reasonably infer that it was only a matter of time before this violent atmosphere resulted in another injury to one or more of respondent-mother's children.

Nor did the trial court clearly err by terminating respondent-father's rights to RT under MCL 712A.19b(3)(b)(*i*). There was clear and convincing evidence that respondent-father engaged in sexual contact with CM and therefore caused the sexual abuse of RT's sibling. Respondent-father also punched RH with a closed fist, though CM could not recall the circumstances. On another occasion, respondent-father pushed CM down for talking back. In both of these instances, respondent-father caused physical injury to RT's siblings. Both instances also evidence a vindictive intent that could not even arguably be characterized as reasonable discipline. "[H]ow a parent treats one child is probative of how that parent may treat other children." *In re Mota*, 334 Mich App at 323. This is true even if the respondent is only an honorary parental figure, rather than the mistreated child's legal parent. *Id*. Additionally, this Court has rejected the notion that a respondent who sexually exploits a young female is not a danger to male children. As this Court succinctly stated in *Mota*, "[A]buse is abuse." *Id*. Considering respondent-father's abusive acts toward CM and RH, the trial court could infer a reasonable likelihood that RT would be injured or abused in respondent-father's care. The trial court did clearly err by terminating respondent-father's rights to RT under MCL 712A.19b(3)(b)(*i*).

## 2. MCL 712A.19b(3)(b)(*ii*)

In addition to the finding of injury or abuse discussed earlier, in order to terminate parental rights under MCL 712A.19b(3)(b)(*ii*), the court must also find that "[t]he parent who had the opportunity to prevent the physical injury or physical or sexual abuse failed to do so and . . . there is a reasonable likelihood that the child will suffer injury or abuse in the foreseeable future if placed in the parent's home."

The trial court did not clearly err by terminating respondent-mother's parental rights to all four children under MCL 712A.19b(3)(b)(*ii*). Respondent-father sexually abused CM and caused her physical injury. Respondent-father also physically abused RH and caused him physical injury. There was no direct, admissible evidence that respondent-mother knew of the abuse or injuries, but that conclusion can be easily inferred. The family lived in a small two-bedroom trailer when most of the abuse occurred, making it highly unlikely that such activities could have gone unnoticed by respondent-mother, as evidenced by CM's knowledge of things that occurred in the household that did not specifically involve her. Respondent-mother was unable to dispute the allegation that she told RH "Cocky will get you killed"—an assertion that most people could readily deny if they were unaware of physical abuse occurring in the household. CM also indicated

-9-

that respondent-father touched her breasts when she sat on his lap, and that he would seat JM in a worrying position between his legs. That CM witnessed these activities with JM suggests that respondent-father was not attempting to hide his conduct and that respondent-mother could have discovered it with reasonable observation. Respondent-mother did not take steps to protect her children, which created a reasonable likelihood that the children would be harmed again in the future if returned to respondent-mother.

The trial court did not err by terminating respondent-father's parental rights to RT under MCL 712A.19b(3)(b)(*ii*). As noted earlier, it was unclear from the admissible evidence which respondent threw the object that struck RH in the head. Nonetheless, when the perpetrator must have been one of the respondents and the other respondent failed to prevent the injury, termination of the respondents' parental rights is appropriate under either MCL 712A.19b(3)(b)(*i*) or (*ii*), even if the perpetrator's identity remains unknown. *In re Ellis*, 294 Mich App at 35-36. The court could have concluded that respondent-mother caused the physical injury to RH (RT's sibling) and that respondent-father failed to protect RH. Notably, even after respondents were aware that RH was bleeding, they continued their fight and left CM to tend to his wound. Under the doctrine of anticipatory neglect, *Mota*, 334 Mich App at 323, the court could view respondent-father's obvious lack of concern for RH's wellbeing as evidence that RT would likely be harmed in the foreseeable future in respondent-father's care.

### 3. MCL 712A.19b(3)(b)(*iii*)

In addition to the finding of injury or abuse discussed earlier, in order to terminate parental rights under MCL 712A.19b(3)(b)(*iii*), the court must find that "[a] nonparent adult's act caused the physical injury or physical or sexual abuse and . . . there is a reasonable likelihood that the child will suffer from injury or abuse by the nonparent adult in the foreseeable future if placed in the parent's home." For purposes of this statutory ground, this Court has adopted the definition of a "nonparent adult" set forth in MCL 722.622(v). *In re Keillor*, 325 Mich App 80, 84; 923 NW2d 617 (2018). MCL 722.622(v) defines a "nonparent adult" as

a person who is 18 years of age or older and who, regardless of the person's domicile, meets all of the following criteria in relation to a child:

(*i*) Has substantial and regular contact with the child.

(*ii*) Has a close personal relationship with the child's parent or with a person responsible for the child's health or welfare.

(*iii*) Is not the child's parent or a person otherwise related to the child by blood or affinity to the third degree.

The only allegations of abuse or injury in this case involved actions by respondents. Respondent-mother was each child's legal parent. Respondent-father was RT's legal parent, married to respondent-mother, and stepparent to CM, RH, and JM. Because respondents were either a parent or related by marriage to each of the children, they were not nonparent adults and MCL 712A.19b(3)(b)(*iii*) could not have applied. See *People v Armstrong*, 212 Mich App 121, 127-128; 536 NW2d 789 (1995) (explaining that the common meaning of affinity is marriage).

-10-

The trial court clearly erred by terminating respondents' parental rights to their respective children under MCL 712A.19b(3)(b)(*iii*). This error, however, does not require appellate relief because "[o]nly one statutory ground need be established by clear and convincing evidence to terminate a respondent's parental rights, even if the court erroneously found sufficient evidence under other statutory grounds." *In re Ellis*, 294 Mich App at 32.

### B.  MCL 712A.19b(3)(c)(*ii*)

MCL 712A.19b(3)(c)(*ii*) provides a statutory ground for termination of parental rights upon finding clear and convincing evidence of the following:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

> \* \* \*

> (*ii*) Other conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions, the conditions have not been rectified by the parent after the parent has received notice and a hearing and has been given a reasonable opportunity to rectify the conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

The phrase "other conditions" refers to "conditions 'other' than those that led to the adjudication." *In re Pederson*, 331 Mich App 445, 475; 951 NW2d 704 (2020).

The first requirement of this statutory ground was undoubtedly met with respect to both respondents. The trial court took jurisdiction over the children on the basis of respondents' admissions in July 2019, and the initial dispositional order was entered in August 2019. Termination did not occur until July 2021—nearly two years later.

The other conditions the trial court relied on under MCL 712A.19b(3)(c)(*ii*) were respondents' failure to benefit from services and the risk of physical and sexual abuse in respondents' home. The adjudication was premised on both respondents' admissions regarding their May 2019 arrests and resulting criminal convictions, as well as respondent-mother's admissions of drug use and domestic violence against adult family members in the children's presence. Because respondents did not make admissions regarding the conditions cited by the trial court under this statutory ground—none of which were known at the time of adjudication—they were "other conditions" for purposes of MCL 712A.19b(3)(c)(*ii*). *Id.*

That said, MCL 712A.19b(3)(c)(*ii*) also requires clear and convincing evidence that the parent received recommendations to rectify those conditions, but failed to rectify them after being given a reasonable opportunity to do so. *In re JK*, 468 Mich 202, 211; 661 NW2d 216 (2003). As to the risk of physical and sexual abuse, petitioner did not present legally admissible evidence satisfying this requirement. The foster-care worker described the case service plan put in place at the outset of the case, but did not suggest that it was changed in any manner after the children

disclosed their allegations of abuse in 2020. Although respondents were certainly aware long before the termination hearings that the children had made certain allegations, respondent-mother testified that the details of the allegations were never shared with her, and she was just learning about the nature of CM's allegations at the time of the hearing. Respondent-father did not testify, but petitioner likewise failed to present any evidence that he was advised of the children's allegations and instructed to rectify the problem. It does not appear that petitioner referred respondents to additional relevant services or that their existing services could address the abuse issues. Under these circumstances, the trial court erred by finding clear and convincing evidence to support termination of respondents' parental rights under MCL 712A.19b(3)(c)(*ii*) on the basis of physical and sexual abuse.

As it relates to respondents' failure to benefit from services, however, the trial court did not clearly err. The foster-care worker testified that respondents' parenting skills had been an issue since the beginning of the case. They completed Parenting for Success, but did not benefit from the program. This case was ongoing for over two years, and respondents never made enough progress in their parenting skills to justify unsupervised visits. In fact, respondents' parenting time was altered from two weekly visits with RH, JM, and RT to a single one-on-one visit with each of these children because respondent-mother was unable to handle RH's behavioral problems. CM did not have regular in-person visits because she was placed with her father downstate, but respondent-mother had also reduced the frequency of her phone calls to CM. Respondents' lack of progress after two years suggests they would be unable to rectify this issue within a reasonable time. Although the trial court's reasoning regarding physical and sexual abuse was flawed, it did not err by finding clear and convincing evidence to support termination of respondent-mother's rights to RH, JM, and RT and respondent-father's rights to RT under MCL 712A.19b(3)(c)(*ii*) on the basis of respondents' unresolved parenting deficiencies.

### C. MCL 712A.19b(3)(c)(*i*).

The trial court also terminated respondent-mother's rights to RH, JM, and RT and respondent-father's rights to RT under MCL 712A.19b(3)(c)(*i*), which permits termination if

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

Because this statutory ground does not involve new or different circumstances, the rules of evidence did not apply to this ground. *Mota*, 334 Mich App at 315 n 3; MCR 3.977(H)(2).

As noted earlier, the first requirement of this statutory ground was met with respect to both respondents because termination did not occur until nearly two years after the initial dispositional order was entered. Respondent-mother's adjudication was premised on her admissions regarding her May 2019 arrest and resulting criminal convictions, drug use, and domestic violence against adult family members in the children's presence. Although the trial court terminated respondent-

-12-

mother's rights to her three youngest children under MCL 712A.19b(3)(c)(*i*), its general findings were somewhat inconsistent with that result. For instance, the court found that respondent-mother successfully completed her probation and substantially reduced her drug use. Although she had three "isolated episodes of [drug] use" during the case, the court did not believe she would "return to the regular pattern of substance abuse that adversely affected [her] ability to parent in the past." In light of these findings, the trial court could not also find clear and convincing evidence that respondent failed to resolve her temporary incarceration and drug use and was unlikely to do so within a reasonable time.

Nonetheless, there was ample evidence that respondent-mother had a serious anger-management problem that caused her to act violently toward respondent-father and others. CM, RH, and JM all described habitual domestic violence. Although there was little evidence of continued domestic violence after the children had been removed and respondents submitted to the court's jurisdiction, there was also no evidence that respondent-mother took steps to resolve this issue. Moreover, showing great insight for her age, CM reluctantly opined that the children should not be returned to respondent-mother until respondent-mother distanced herself from respondent-father, as the fighting between respondents would inevitably resume. Considering CM's intimate knowledge of the family dynamics, mature insight, and credibility, we are not left with a definite and firm conviction that the trial court erred by finding that petitioner established grounds for termination of respondent-mother's parental rights under MCL 712A.19b(3)(c)(*i*) on the basis of domestic violence.

Respondent-father, however, only admitted that he was arrested in May 2019 and pleaded guilty to possession of a weapon, ammunition, and drugs. These were the conditions that led to his adjudication. Petitioner voluntarily dismissed respondent-father's drug use as a basis for termination and indicated that it did not intend to present evidence regarding that issue. Consistent with this concession, the trial court specifically found that respondent-father had not shown an ongoing problem with drugs and opined that it was unlikely he would return to substance abuse. Petitioner also failed to present any evidence that respondent-father's legal troubles continued. Consequently, the trial court clearly erred by finding that respondent-father's parental rights could be terminated under MCL 712A.19b(3)(c)(*i*). This error, however, does not require appellate relief because "[o]nly one statutory ground need be established by clear and convincing evidence to terminate a respondent's parental rights, even if the court erroneously found sufficient evidence under other statutory grounds." *In re Ellis*, 294 Mich App at 32.

Affirmed.

/s/ David H. Sawyer
/s/ Anica Letica
/s/ Sima G. Patel

-13-